Syllabus.

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

NEY AND OTHERS V. WRENN AND OTHERS.

January 12, 1915.

Absent, Keith, P.

1. EVIDENCE—*Complete Parol Contract—Negotiations Leading up to Contract.*—In an action to recover the price of machinery sold and delivered where the defense was false representations as to the condition and capacity of the machinery, after a consummated and completed oral contract of sale had been established, it was not error to admit evidence of personal interviews and negotiations between the parties or their representatives which led up to and resulted in the sale.

2. WARRANTY—*Breach—Case at Bar—Changes in Machinery—Failure to Work.*—The seller of machinery who warrants it to be "strictly up-to-date and in first-class working condition," cannot escape liability for a breach of warranty by showing that the buyer discarded an essential part of the machinery and substituted another device in its stead, where it appears that the machinery could not be made to work satisfactorily with the discarded piece, which was antiquated and inefficient, and that what was substituted was a modern and efficient piece of machinery, and that the substitution was made upon the advice of the seller's agent, who was sent by him to install the machinery and put it into operation.

3. EVIDENCE—*Warranty That Machinery Is Modern—Evidence That It Was Second Hand.*—Where a purchaser of machinery relies upon a breach of warranty that the machinery is "moddern, up-to-date, and strictly first class in every respect," it is permissible for him to show that it was second hand when his vendor bought it.

---

4. Evidence—*Declarations of Agent in Course of Agency.*—Where the seller of machinery denies liability on his warranty of fitness, because the buyer discarded and refused to use an essential part of it, the statement of the seller's agent and servant sent to install the machinery that the discarded part was of no value and he advised that it be discarded, is admissible in evidence against the seller.

5. Instructions—*Jury Fully Instructed.*—Where the jury have been fairly and fully instructed on every material point involved in a case, it is not error to refuse to give other instructions requested.

6. Instructions—*Read as a Whole—Defective Statements in Some.*—Instructions in a case are to be read as a whole, and if, when so read, it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions was defective.

Error to a judgment of the Circuit Court of Augusta county in an action of assumpsit. Judgment for the defendants. Pliantiffs assign error.

*Affirmed.*

The following instructions were given:

(1) The court instructs the jury that, inasmuch as there is no dispute that the chattels mentioned in the declaration were in fact delivered to and received by the defendants—under no circumstances are the defendants entitled to abatement of purchase money or recoupment by reason of any alleged breach of warranty or misrepresentation other than in the particular specified in their pleas; and that the burden of proof rests on the defendants to show affirmatively by the preponderance of the evidence to the satisfaction of the jury that the machinery did not measure up to the required standard in these particulars.

(2) The court instructs the jury that no special form of words is necessary to create a warranty. Any affirmation of quality by the seller at the time of the sale, in-

tended as an assurance of fact and relied on by the buyer constitutes a warranty.

(3) The court instructs the jury that if they believe from the evidence in this case that the plaintiffs, at the time they sold the machinery, apparatus and equipment in the declaration mentioned to the defendants, distinctly affirmed that said machinery, apparatus and equipment were modern, up-to-date, in strictly first-class working condition, and would do satisfactory work, and that they, the said plaintiffs, would make the same do satisfactory work, and that this affirmation was intended by the plaintiffs as an assurance to the defendants of the truth of the facts affirmed, and as an inducement to them to make the purchase, and further believe that said affirmation was received and relied on and acted upon by the defendants, then such affirmation constituted in law an express warranty for the breach of which the plaintiffs are liable in damages to the defendants.

(4) The court instructs the jury that if they believe from the evidence in this case that the plaintiff, Ney, warranted to the defendants, when making sale of the machinery, apparatus and equipment in the declaration mentioned, that the said machinery apparatus and equipment were modern, up-to-date, in strictly first-class working condition and would do satisfactory work, and further believe from the evidence that the said machinery, apparatus and equipment were not as warranted, then they should find for the defendants such damages as have resulted naturally from the breach of said warranty.

(4-a) The court instructs the jury that if they believe from the evidence in this case that the defendants are entitled to recover damages from the plaintiffs by reason of the breach of any warranty under which the machinery, apparatus and equipment were sold by the plaintiffs to the defendants, and that the damages shown by the evidence to

have naturally resulted from the breach of said warranty exceed the plaintiffs' demand, they should find a verdict in favor of the defendants against the plaintiff for such excess.

(5) The court instructs the jury that before a contract can exist the parties to it must agree to the same thing at the same time, and the assent of each party must be to the precise terms offered.

(6) If the jury believe from the evidence that the machinery, etc., was defective but that said defects were of an inconsequential or minor character and such as one not a skilled mechanic could readily see and remedy, then the defendants should have notified plaintiffs, and they should have been remedied by the plaintiffs upon receipt of notice thereof and in the event of plaintiffs' failure to discharge this duty then it was the defendants' duty to make said repairs themselves and charge the same to the plaintiffs.

On the other hand if you believe from the evidence that the defects were serious or that the machinery, etc., was unsuited for the purposes for which it was designed, or that said defects though not in fact serious were such that one not a skilled mechanic could not readily locate or repair it was the defendants' duty to notify the plaintiffs. When such notice was given it was plaintiffs' duty to do what was necessary to put the same in condition for successful operation. If plaintiffs failed to do this then the defendants had the right to set this machinery aside, procure other machines and recover of plaintiffs damages suffered.

(7) If you believe from the evidence that the defendants did not install as part of the machinery purchased the gasometer because it was inconvenient to do so or for any other reason and that failure to do this prevented the plant from working satisfactorily or was one of the reasons that prevented it from doing such work then defendants are entitled to no relief from damages due to this cause. On the

other hand if you believe from the evidence that a gas regulator was substituted for the gasometer and that such substituted device was in all respects equal to the gasometer and that the operation of the plant was not adversely affected by said substitution then in that event plaintiffs cannot complain of the substitution.

The burden is on the defendants to show that that damages for which relief is claimed did not follow from such substitution, not until this is done are they entitled to relief for damages so suffered.

(8) The burden is on plaintiff to prove his case, but by a preponderance of the evidence to the satisfaction of the jury—not beyond a reasonable doubt.

If independent matters are set up by defendants by way of defense to plaintiffs' demand, the burden is on them to establish such facts by such a preponderance of the evidence, but not beyond a reasonable doubt.

As to what were the warranties or representations under which the sale was made—you are to determine this from the evidence adduced before you.

You can give judgment for the plaintiff for all of his claim or any part thereof. Also, as to defendants' claim, you may allow it in whole or in part. That is to say if you find his damages to be ten cents, you may allow plaintiffs' demand less ten cents. If you find it to be $500.00 you are to allow plaintiffs' claim less that amount. If you find it to be in excess of plaintiffs' demand, you are to give judgment in favor of defendants for such excess.

*Rudolph Bumgardner* and *D. O. Dechert,* for the plaintiffs in error.

*Timberlake & Nelson,* for the defendants in error.

CARDWELL, J., delivered the opinion of the court.

Isaac Ney and M. Wurzburger, his partner, were the owners of a "soft drink plant," at Harrisonburg, Va., the equipment thereof consisting of machinery, bottles and crates, which machinery had been operated by them for two seasons, 1909 and 1910, and a part of 1911, in the business conducted by them at Harrisonburg, under the style of Harrisonburg Bottling Works. Wurzburger had charge of the operation of the plant and Ney had attended to the office work, bookkeeping and correspondence. Early in 1911 the calls upon Wurzburger for attention to a store conducted by him, also in the town of Harrisonburg, were such that he could not give his personal attention to the bottling business, and it was discontinued. The machinery and equipment of the plant then remained idle for about one year, when upon learning that M. F. Wrenn, L. L. Koontz, T. M. Wise, Wood Harshbarger, J. F. Pirkey and J. F. Shaver, residing at or near the village of Weyer's Cave, Augusta county, had organized a bottling company, under the name of the Weyer's Cave Lithia Bottling Works and were on the market for a bottling apparatus, Ney wrote one of Wrenn's associates a letter on February 25, 1912, calling his attention to the fact that the machinery and equipment of his bottling plant at Harrisonburg was for sale. Letters were exchanged, and later both Wrenn and Shaver visited Harrisonburg to see the machinery, and to discuss terms of purchase with Ney and Wurzburger, and after interviews with their associates a purchase of the machinery and equipment, constituting the bottling plant at Harrisonburg, exclusive of "any machinery for the generation of power, or any buildings," was agreed upon by Wrenn and associates, at the price of $1,350, of which $50 was paid in cash, $625 was to be paid June 1, 1912, and

$675 on May 1, 1913, and the apparatus was to be shipped to Weyer's Cave and installed by the sellers thereof.

After this purchase had been agreed upon and the cash payment of $50 made, Ney suggested that the terms of the contract be reduced to writing, and stated that he would have this done and send the agreement to Shaver, who was acting for his company. A short time afterwards Ney had a contract drawn and sent it, together with the bonds evidencing the deferred instalments of purchase money, to the representatives of the company at Weyer's Cave, but when this agreement, which had not been signed by either Ney or Wurzburger, was received, the representatives of the company at Weyer's Cave found that it wholly omitted the warranty upon which the bottling apparatus had been sold to them, and they accordingly wrote out the warranty on a slip of paper and attached it to the agreement, then signed and acknowledged it, and returned it to Ney and Wurzburger. Ney received the paper with the slip attached, put it in his safe, neither he nor his partner, Wurzburger, signing it, and as he states forgot all about it; so that the agreement between the parties as to the sale of the apparatus in question was never reduced to writing.

The apparatus was shipped to Weyer's Cave, and it was installed under the direction of a man sent from Harrisonburg by Ney for the purpose, but shortly after the apparatus had been put into operation under a skilled man, it was discovered that it was wholly unsatisfactory, and that in spite of all efforts on the part of Wrenn and his associates and on the part of a skilled operator whom they had employed, it could not be made to do satisfactory work, and when they found that the apparatus would not perform the work for which it was intended and sold, they repeatedly endeavored to get Ney to send some one to Weyer's Cave to examine it and, if possible, to put it in working condition, but Ney, though often promising to comply with these re-

quests, wholly failed to do anything. Wrenn and associates, after using as they claim, every effort in their power to make the apparatus work, making such repairs thereto as they could, and becoming satisfied that Ney and Wurzburger were not going to pay any attention to their complaints and repeated requests to come or send some one up to see about the apparatus and to make it work satisfactorily, notified Ney and Wurzburger that the apparatus would be taken out and stored subject to the order of Ney and Wurzburger, and payment of the deferred instalments of the purchase money refused. Some time after this Ney and Wurzburger brought this suit against Wrenn and his associates in the purchase of said apparatus to recover the purchase price agreed on therefor.

The defendants pleaded the general issue and filed two special pleas of set off under the statute—section 3299 of the Code—setting up a breach of warranty, misrepresentation, and failure of consideration, in that the apparatus in question was wholly worthless; that it was old, second hand machinery when plaintiffs bought it and which they warranted would do satisfactorily the work for which defendants agreed to buy it; and that they, the defendants, in addition to the loss of time and the loss of business, had suffered other damage due to the removal of the apparatus from their place of business and storage of it elsewhere.

Upon the issues thus made the jury found for the defendants outright, and upon their pleas of set-off assessed their damages against the plaintiff's at $250; whereupon, the court, being of opinion that the defendants could not upon their pleas of offset recover any damages for loss of profits in their business, but could only recover for the $50.00 payment they had made and for the actual money expended by them in taking down and storing the apparatus put the defendants on terms to reduce their recovery to $65.00, to which defendants assented, and judgment was thereupon

entered in their favor for this amount and costs. This judgment we are asked to review and reverse.

At the trial of the cause below, plaintiffs took a number of bills of exception to rulings of the court in the progress of the trial, and those exceptions are made the basis of numerous assignments of error in the petition for this writ of error, but we deem it only necessary to consider certain propositions of law submitted and argued in the petition as applicable to the case and as requiring a reversal of the judgment complained of.

The first of these propositions is that the contract of sale of the bottling apparatus to defendants in error was in writing and, therefore, the trial court erred in admitting evidence of personal interviews and other negotiations between the parties with respect to and resulting in the sale of the apparatus in question.

We have already pointed out that there was no written contract between these parties, and Ney's own testimony given in the case on behalf of himself and his co-plaintiff conclusively shows that there was a consummated and complete sale of the apparatus orally in Harrisonburg, and upon certain definite and admitted warranties that this machinery, apparatus and equipment would do satisfactory work, Ney stating, as he admits, that "it was strictly up to date in every respect and in first class working condition;" that it would do satisfactory work; and that he (Ney) and his associate, Wurzburger, would make it do satisfactory work; that he made these statements intending that defendants in error should accept them as true and rely on them. In these circumstances the admission of evidence of personal interviews and negotiations between the parties or their representatives, which led up to and resulted in a consummated sale and delivery of the machinery, etc., to defendants was clearly not erroneous.

The next proposition of law urged as applicable to the case is that the machinery or apparatus in question could not be discarded by defendants in error for arbitrary or capricious reasons, or because it would not do efficient work in inefficient hands.

This proposition of law, in the abstract, is unquestionably sound, but it has no application to this case in which the evidence shows conclusively that the machinery would not do satisfactory work in the uses for which it was purchased and which the sellers warranted that it would do, but failed or refused to make good their warranty. There was no evidence that in the effort to operate the apparatus satisfactorily it was entrusted to inefficient hands.

The next proposition of law contended for is, in effect, that by reason of defendants having discarded the gasometer, which was one of the three essential parts of the apparatus in question, and substituted in its stead another device known as a "regulator," "they thereby changed the identity of the chattel, so that the subject matter of the suit is not the same as the subject matter of the sale," and, therefore, defendants should not have been heard to make the defense that the apparatus did not and could not be made to do satisfactory work as plaintiffs admitted that they had agreed that it should do.

The evidence in the case shows that the gasometer was discarded and the "regulator" substituted in its stead because the first named was an antiquated device, while the latter was a modern and efficient device, and this change was made upon the advice of H. S. Butler, witness for plaintiffs in this suit and their agent and representative who was sent by them to install and put in operation this apparatus, Butler saying that the gasometer was utterly worthless. Not only so but Mosely, the expert witness introduced by plaintiffs, testified that the "regulator" was the modern and efficient device, and the one which he him-

self used in his own plant, and, further, that this particular regulator which defendants used in place of the gasometer, was the best that could be obtained, and that no unsatisfactory operation of the plant could possibly be charged to its use. It further appears in evidence, that when defendants in error took out the apparatus in question and put in a new one, they continued to use the identical regulator which they had used with the apparatus taken out and it gave perfect satisfaction. It cannot, therefore, in the light of these facts, be maintained that the employment of a modern and efficient regulator in the place of an inefficient gasometer occasioned, as is contended, the loss to defendants of their rights under the warranty made them by plaintiffs.

The next contention of plaintiffs in error is also without merit. It is that the alleged inefficiency of this machinery or apparatus was due to the worn condition of certain parts designated as "repairs" easily supplied at small cost from the factory, and at the utmost entitling defendants to a rebate of purchase money by way of damages, to the extent of the small outlay necessary to replace these parts, and by no means justifying a rescinding of their contract of purchase. This contention goes further and makes claim that the court should have, in its instructions, told the jury that they could only allow defendants' offset to the extent that plaintiffs' witness said the cost would have been in making repairs necessary to put the apparatus in question in satisfactory working condition.

In the first place, the defense to this action set up by defendants in their special pleas of set off, as authorized by the statute, *supra,* did not involve a rescission of the contract between the parties, but only set up a claim for the damages sustained by them because of plaintiffs' breach of their warranty. Secondly, the evidence tended to prove that the apparatus in question was wholly worthless, and therefore unsuited to the purposes for which it was bought,

while the warranty given by plaintiffs, according to the undisputed facts proven, was that the apparatus would do satisfactory work, and if it did not plaintiffs would make it do it; that defendants called on plaintiffs time and again after it was found that the apparatus would not work properly to make good this part of their warranty, and they wholly failed or refused to do so.

Plaintiffs, as it would seem, relied upon, as supporting their contention that the claim to damages set up by defendants on account of the breach of warranty, should have been limited to what their (plaintiffs') expert witness, who had never seen the apparatus, stated it would have cost to make the repairs necessary to put the apparatus in working condition, but, as it appears to us, the court very plainly and correctly stated to the jury the law on this subject in instruction "O," which the court gave of its own motion. This instruction told the jury that if the defects in the apparatus in question were of an inconsequential or minor character, such as one who is not a skilled mechanic could readily see and remedy, it was the duty of defendants, under the terms of the warranty, to notify plaintiffs, and if plaintiffs did not make the repairs, to make them themselves and charge them to the plaintiffs. Thus the jury were enabled to consider all the evidence for plaintiffs on this line, and the instruction then correctly told the jury that if the defects were serious, or the machinery unsuited to the purposes for which it was designed and purchased, or if the defects, though not in fact serious, were such as one not a skilled mechanic could not readily locate or remedy, it was the duty of defendants to notify plaintiffs to remedy it, failing which the defendants had the right to set the machinery aside, buy other machinery, and set up their damages by reason of plaintiffs' breach of warranty.

It is next contended that as a matter of law, the court erred in allowing defendants to show that the machinery

was second hand machinery when plaintiffs bought it in Baltimore. Manifestly, this evidence was admitted, not for the purpose of showing a warranty against the machinery being second hand, but to show that fact as tending to corroborate the contention of defendants that it was not "modern, up-to-date and strictly first class in every respect," as plaintiffs had warranted it to be.

It is next urged that the trial court erred in allowing the defendants to show that Butler, who was sent by plaintiffs to Weyer's Cave to install the machinery, said that the gasometer was of no value and that the machinery would work as well without it.

Plaintiffs were urging at the trial, as one of the reasons why defendants could not rely upon their warranty, the fact that they did not use the gasometer, and, therefore, it was clearly competent for the defendants to prove, among other things, that Butler, the plaintiffs' own agent and representative, who was sent by them to Weyer's Cave for the purpose of installing and putting the machinery in operation, had then and there stated that the gasometer was of no value and advised defendants not to have it put in. Not only was this evidence competent to show the condition of the apparatus, but to explain the reason why the defendants did not install and use the gasometer. But if there was any good reason for contesting the competency of this evidence, its admission could not have materially affected the rights of plaintiffs, for the fact plainly appears from their own evidence that the gas regulator which defendants did use was an infinitely better device than the gasometer discarded upon the advice of Butler, so that none of the failure of the apparatus to operate satisfactorily could possibly have been attributable to the substitution of the regulator for the gasometer.

After the evidence in the case had gone to the jury the court was asked by the respective parties to give numerous

instructions, but instead of instructing the jury as asked it gave nine instructions to the jury as to the law of the case, designated in the record as Nos. "1," "2," "3," "4," "4-a," "5," "6," "7," and "8," the last three being of the court's own volition.

The instructions given (and set out in the official report of this opinion) fairly and fully submitted to the jury the case on every material point involved, applying the law to the facts which the evidence tended to prove as justly and as fairly as the respective parties to the controversy could reasonably have asked. Having thus instructed the jury, it was not, as this court has repeatedly ruled, error to refuse other instructions asked. Among the latest expressions by this court affirming that rule is to be found in *Bowman* v. *First Nat'l Bank,* 115 Va. 463, 80 S. E. 95; *Luck Construction Co.* v. *Russell,* 115 Va. 335, 79 S. E. 393.

Another, and equally as well established rule is that instructions in a case are to be read as a whole, and if, when so read, it can be seen (as in the case here), that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions was defective. *C. & O. Ry. Co.* v. *McCarthy,* 114 Va. 181, 76 S. E. 319.

The instructions in this case to which no specific objection is clearly pointed out appear to us so manifestly correct and so fully and fairly covered every fact in the case which the evidence tended to prove as to leave the plaintiffs no just cause for complaint of them.

The remaining question is whether or not the trial court erred in refusing to set aside the verdict of the jury and award the plaintiffs a new trial.

We have already, in discussing other questions, gone quite fully into the facts which the evidence tended to prove, and deem it necessary to add but little here with respect to the sufficiency of the evidence to sustain the verdict of the

jury. That the sale of the bottling apparatus by plaintiffs to the defendants was under a warranty given by the former to the latter to the effect that this machinery "was strictly up-to-date in every respect and in first class working condition," and that these representations were made for the purpose of having defendants rely on them, are facts conceded in the trial of this case. It also very clearly appears in the evidence that when defendants found that the apparatus would not do the work for which it was intended and sold, Ney, from whom the apparatus had been purchased, was duly notified of its defective condition and asked a number of times to come himself or send some one to Weyer's Cave to examine the apparatus and, if possible, put it in working condition, but neither Ney nor his partner, Wurzburger, though promising to comply with these requests, would do anything towards making the apparatus do the work for which it was intended, and which it was warranted by them to do. It further appears, as before stated, that defendants made every effort in their power to make the apparatus work satisfactorily, making such repairs thereto as they could, and it was not until they found that it could not be made to so work and that Ney and Wurzburger were not going to pay any attention to the complaints made to them of the unsatisfactory work the apparatus was doing did defendants, after notice to plaintiffs of their purpose to do so, take the apparatus out of their place of business, store it away subject to the order of the plaintiffs, and refuse to pay the balance of the purchase price therefor. According to the evidence of the defendants (and there was little, if any, to the contrary) this entire apparatus and equipment were worthless and fit only for junk.

No good purpose could be subserved by discussing further the evidence in the case. Suffice it to say that the jury would not have been, in our judgment, warranted in find-

ing any other verdict than they did find, to the effect that there had been a warranty of the apparatus in question, as above stated; that there was a total breach of this warranty, and, therefore, plaintiffs were not entitled to recover of defendants in this action any part of the purchase money for the apparatus sued for.

As observed, the jury found a verdict in excess of offsets in favor of defendants against plaintiffs for $250, which was made up in part by loss of profits or business, but the court, with the assent of defendants, reduced this recovery to $65.00, which latter sum is made up of the cash payment of $50.00 they had made to plaintiffs on the purchase price of the bottling apparatus in question and the actual money expended by defendants in taking down and storing the apparatus subject to the order and control of the plaintiffs.

Upon the whole case, we are of opinion that the judgment of the circuit court complained of is right and, therefore, it is affirmed.

*Affirmed.*