### Richmond.

## NORFOLK AND WESTERN RAILWAY COMPANY V. SPATES.

### November 15, 1917.

1.  FIRES—*Railroads—Evidence as to Other Fires.*—In an action against a railroad for damages by fire, since the Featherston act, Acts of Assembly, 1908, p. 388, it is not error to admit evidence for the plaintiff that other engines of the railroad company at other times in the past had thrown out sparks and cinders and in some cases had set out fires at and near the locality of the buildings of the plaintiff, for damages for the burning of which the action was brought. Prior to the Featherston act, the ultimate question of fact in issue in railroad fire damage cases was whether the fire was *negligently set out* by the railroad company. Since the Featherston act the issue in such cases does not include negligence as an essential ingredient. Such ingredient consists only of the existence of the fact of the setting out of the fire by the railroad company by sparks or coals (cinders) dropped or thrown from some one or more of its engines, and that, under such act, is the ultimate fact in issue; and all evidence, whether circumstantial or direct, which tends to prove that issue, is admissible.

2.  FIRES—*Railroads—Evidence as to Other Fires—Weight of Evidence.*—Evidence that on other occasions the engines of defendant company had thrown out sparks and cinders and in some cases had set out fires at and near the locality of the fire about which action was brought, was not conclusive evidence in itself, but admissible to be weighed and considered by the jury in connection with all the other evidence in the case.

3.  FIRES—*Railroads—Evidence of Other Fires—Remarks of Court on the Evidence—Appeal and Error—Harmless Error.*—It was not error in the trial court in its ruling as to the admissibility of evidence of sparks and cinders being thrown out and fires started at other times, to remark that: "I think it admissible but not on the ground of showing that the engines were defective, but showing that at that point the railroad company had thrown out fire on other occasions and therefore that it is *possible* for it to have thrown out fire at this time." The objection of the defendant to the ruling was the use of the word "possible" instead of the word "liable," as the court

used in later rulings on the same question, but it was consid-
ered that in this connection the word "possible" was more
favorable to the defendant than the word "liable." Moreover,
in view of the admittedly correct instruction given by the trial
court on this point, it does not affirmatively appear from the
record that the jury was misled by this ruling or would or
could, in accordance with the evidence, have rendered a dif-
ferent verdict from what they did, and hence the error in such
ruling, if there was one; was harmless.

4. FIRES—*Railroads—Instructions.*—In an action against a railroad
for damages by fire, the following instruction, "The court fur-
ther instructs the jury that the burden of proof is upon the
plaintiff to show by clear and affirmative testimony that the
defendant set out the fire, the court telling the jury that it is
not sufficient for the plaintiff to show that it was possible for
the defendant to have started the fire but it must appear from
the evidence that there was no other probable cause for the
fire," is not contradictory in terms, or calculated to mislead
the jury into believing therefrom that it was instructed that
the railroad company was liable, unless it appeared from the
evidence that there was no other probable cause for the fire,
when taken in connection with another instruction, "that before
the plaintiff can recover in this case the evidence must be such
as to show more than a mere probability that the property was
destroyed by sparks of fire or cinders set out by an engine of
defendant company."

5. INSTRUCTIONS—*Multiplicity of Instructions.*—The practice of
diminishing instead of multiplying instructions unnecessarily
is rather to be commended than condemned.

6. INSTRUCTIONS — *Right to Instructions — Instructions Already
Given.*—The principle that when an instruction prepared by
counsel for either party states a correct principle of law, then
the party offering it is entitled to have it given in the lan-
guage employed in it, is subject to the well-settled qualifica-
tion that when the jury have been fully and sufficiently in-
structed on a given point or points in a case, it is not error to
refuse other instructions, though correct, on the same point or
points.

7. FIRES—*Railroads—Instructions.*—It is not error to refuse an in-
struction (although the proposition of law enunciated is cor-
rect) that the jury cannot "presume from the happening of
the fire that it was caused by the defendant company's engine
or engines," where it did not appear that the jury were asked
to apply such a presumption, but, on the contrary, other in-
structions clearly instructed them as to the law which nega-

tived any such presumption. Moreover the instant case was not one in which the plaintiff was left by the evidence to rely upon such a presumption. She had other evidence in her behalf on the point. Hence the giving of such an instruction in such a case would have been confusing and misleading to the jury.

8. FIRES—*Railroads—Instructions—Evidence to Support.*—Where the evidence showed that the fire could only have arisen from causes for which defendant railroad was responsible and liable in damages under the Featherston act, it was not error to refuse an instruction that if the jury believed that the fire might have resulted from one of two causes, for one of which defendant was responsible, but not for the other, the plaintiff could not recover, nor could the plaintiff recover if it was just as probable that the fire was caused by the one as by the other cause.

9. FIRES—*Liability of Railroad—Featherston Act.*—A railroad is liable under the Featherston act for a fire originating in any of the following ways: (a) From coals, or cinders, dropped from an engine and thrown by the wheels on trash and dry vegetable matter on the right of way of the railroad company, from which the fire burned over the ground and communicated and set fire to plaintiff's property. (b) From sparks thrown from an engine on trash and vegetable matter on the right of way of defendant railroad, from which the fire burned over the ground and communicated and set fire to plaintiff's property. (c) From sparks thrown from an engine, beyond defendant railroad's right of way on to plaintiff's property.

Error to a judgment of the Circuit Court of Clarke county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

## STATEMENT OF THE CASE AND THE FACTS.

This is an action by the defendant in error, plaintiff in the court below (hereinafter referred to as plaintiff), against the plaintiff in error (hereinafter referred to as railroad company), to recover damages for the burning of a store, warehouse, corn house and mill of the plaintiff by

fire alleged to have been occasioned by sparks and coals dropped or thrown from an engine or engines of the railroad company.

There was a trial by jury which resulted in a verdict and judgment for the plaintiff and the case is brought here upon errors assigned by the railroad company because of the refusal of the trial court to set aside the verdict and grant it a new trial; of admission of improper testimony; improper ruling thereon; the giving of improper instructions and refusal to give proper instructions, as contended by the railroad company.

The suit was brought under the Acts of Assembly, 1908, p. 388, known as "The Featherston act," which (omitting the formal parts thereof), provides as follows: "That whenever any person shall sustain damages from fire occasioned by sparks or coals dropped or thrown from the engine or train of any railroad company, such company shall be liable for the damage so sustained, whether said fire shall have originated on said company's right of way or not, and whether or not such engine is equipped with proper spark-arresting appliances and regardless of the condition in which such appliances may be."

### THE EVIDENCE AND FACTS.

The ultimate question of fact in issue in the case was whether the fire in question was occasioned or set out by sparks or coals (cinders) thrown or dropped from the engine or engines of the railroad company.

There was no eye witness of the setting out of the fire. The evidence relied on by the plaintiff to prove that the fire was set out by such sparks or coals (cinders) was wholly circumstantial.

As tending to prove the ultimate fact aforesaid the plaintiff introduced circumstantial evidence to the effect that on

a great number of recent occasions, extending up to about the time of the fire and on one occasion shortly thereafter, sparks and cinders were thrown out at and very near the point or locality where said buildings were located, by engines of the railroad company. Most of this evidence was with respect to engines of trains going north (the same direction in which the engines of the identified freight train hereinafter mentioned were going), and some of such evidence was with respect to engines of trains going south or in the opposite direction. The first evidence so introduced was the testimony of the husband of the plaintiff. Such testimony and the ruling of the trial court thereon which is made the basis of one of said assignments of error, will best appear from the following quotations from the record:

"Q. Well, now, state to the court and jury whether or not you have frequently seen sparks and cinders thrown out at that point by the engines of the railway company?

"Defendant's objection. Counsel for defendant object to the question as wholly irrelevant, immaterial and incompetent.

"By the Court: I think it admissible, but not on the ground that the engines were defective, but to show that at that point the railroad company has thrown out fire on other occasions and therefore that it is possible for it to have thrown out fire at this time. Defendant excepted.

"A. Well, yes, sir, I have frequently seen them set fire out there. On one occasion—if you will let me have the diagram I will show you: On one occasion, I think about two years ago—

"Mr. Smith: You were not asked that question.

"Witness: I want to show where I had seen fire.

"Mr. Smith: You were asked if you had frequently seen sparks and cinders thrown out by engines.

"A. Yes, sir. I have frequently seen them thrown out and I wanted to show that one particular time.

"By Mr. Whiting: Q. All right. State if you have ever known fire to occur at that point from sparks and cinders thrown out by engines going along the track of the Norfolk and Western Railway?

"Defendant's objection: Defendant by counsel object to the question for the reason heretofore assigned, and for the further reason that no time is fixed and it is impossible for the defendant to meet the evidence along this line. Defendant says the evidence should be confined to the particular engine or engines on that morning, that there is no averment in the declaration of the habit of throwing out fire, but that the averment in the declaration is as to this freight train, and that the defendant has not been called upon to answer other fires that might have been set out on other occasions.

"By the Court: The objection will be overruled. It is not admitted on the grounds that these engines throw out sparks improperly, but that at that particular place they were liable to throw out sparks. That is the point upon which this evidence is admitted, that because of the grade or other conditions at this particular point these engines or any engines are liable to throw out sparks when passing that place. Defendant excepts.

"A. (By witness). Yes, sir, I have. A number of times; and I wouldn't confine myself to the very number of times, but I would say in the last four years I have put out fire there forty times at different points along the road adjacent to this point.

"Defendant's motion to strike out answer. Thereupon defendant moves the court to strike out the answer of the witness as incompetent, immaterial and irrelevant; and, without interposing a specific objection to each and every question propounded along this line, asks that it be understood that the defendant is objecting to every question and excepting to every answer along this line.

"By the Court:   All right, the motion will be overruled.

"Q. (By Mr. Whiting):   Had you finished your answer?

"A. On one or two occasions I have gotten water and put out ties when I closed the store at nine o'clock at night, when four or five would be burning at one time.. So far as fire from sparks and cinders are concerned, I changed the construction of the corn roof on account of fire.   When first built the corn house had a flat roof, running down to the mill—

"Defendant's Objection:  Counsel for defendant objected to the answer being given by the witness because not responsive to any question.

"By the Court:  No, I believe that is not responsive to the question.

"Q. (By Mr. Whiting):   Mr. Spates, just state what, if anything, you know of sparks and cinders having been thrown out by the engines of defendant company's trains running along its track on to the roof of your building?

"Defendant's Objection:  Counsel for defendant repeat their objection heretofore made.  Objection overruled. Defendant excepts.

"A. Oh, yes, sir, invariably they throw sparks there when coming north.   When they come up over the hill, after they pass through the dip in the track, they hit the top or end of the dip just above my store, and always open up the throttle and throw sparks.   Frequently I have been in the store or in the warehouse particularly, and sparks will rain on the tin roof.   They always open the throttle coming north and it throws sparks and cinders, too, in every direction.

"Q. What do you know about finding cinders on the top of the roof.  Defendant objects.  Objection overruled.  Defendant excepts.

"A. Well. I have shoveled a bushel off there, and changed

the roof on that account. Sparks and cinders accumulated on there and they might eventually set fire to something. ·

"Q. State if you have ever known fire to be started by the railroad company on the west side of your building from sparks thrown over the top of the building? Defendant objects. Objection overruled. Defendant excepts.

"A. Yes, sir, I have known them to throw sparks over the building—

"By the Court: I understand that you not only saw the sparks, but saw them thrown out there in the day?

"Witness: Yes, sir, I have on several occasions. I have stood on the siding and seen sparks rain out, and have walked around on the other side of the building and saw there was fire. The train *was pulling north* and had backed a car off the siding. Coming off the siding they had to use a great deal of steam power to get up that grade. In backing that car out of the siding they hit the grade and the engine threw sparks a distance of half-way between there and the stable."

In the progress of the trial the broad question of fact aforesaid, was narrowed, by the facts admittedly established by and as the evidence for the plaintiff was introduced, to the ascertainment of whether the fire was set out by sparks or cinders (singular or plural in number) thrown or dropped from one or both of two identified engines drawing a certain freight train going north which passed the buildings aforesaid a few minutes before the fire originated.

The railway company introduced, in its defense of the action, direct testimony of the enginemen and conductor of said freight train to the effect that these engines threw no sparks on the occasion in question when they passed by or anywhere near the said buildings; that all steam was shut off from these engines at such time, so that they were then merely *drifting;* that when *drifting* it was impossible for

the engines to throw out sparks; so that if this direct evidence as to the engines having no steam on them at such time was true, it was *impossible* for the fire to have been set out *by sparks* from them or either of them.

However, the testimony for the defendant let fall the facts that while the rules and orders of the railroad company required its employees operating said freight train and all other trains of the railroad company to run slowly by the said point or locality, owing to the changes in grade and curves in the railway track thereabout, and with the throttles of the engines of trains going north closed and the engines drifting by, it was admitted by some of the witnesses for the defendant that such rules and orders had not been invariably obeyed; that the latter had indeed been frequently violated by the employees of the railroad company operating its trains, and they admitted, in effect, that they themselves were guilty of violating such rules and orders at the time of the fire in question, to the extent of running said freight train at a greater rate of speed than that allowed at that locality by such rules and orders, although they insisted that they had the steam shut off from the engines as aforesaid.

Here was a conflict between the circumstantial evidence for the plaintiff and the direct evidence for the railroad company on the question of fact of whether the engines pulling said freight train had the steam shut off or not, and whether consequently they did or did not throw out sparks at said locality at the time of the setting out of the fire in question. It was a question of fact for the jury whether they did or did not believe the direct testimony for the railroad company on this point.

The evidence for both the railroad company and the plaintiff agreed that *all* of the engines of the railroad company threw sparks at said locality, when the steam was *not* shut off from them, whether going north or south along the railway track.

The evidence as to the coals (or cinders), both for the plaintiff and railroad company, agreed that they might have been dropped from the ash pans of the engines of said freight train, on the main line of the railway opposite said buildings on the occasion in question. That there was no inflammable matter on the main line of railway track itself at this point; that there was a side-track between said main line of railway track and the said buildings, with the usual space between such tracks, both of which and the space between them was free of inflammable matter; but from the side-track to the corn house, which first took fire, there was a distance of sixteen feet; on which was lying some dry weeds and other vegetable matter cut by the railroad company a few days before the fire and also some "trash." The right of way of the railroad company extended to within about one foot of said corn house, or fifteen of said sixteen feet, on which said dry vegetable matter and trash lay. The evidence is conflicting as to the amount of such vegetable matter and trash, and as to whether the fire first caught near the side-track and burned over to the corn house, or caught first in, under or near the corn house and after, or while setting fire to the corn house, burned back to the side-track; but (omitting a good deal of immaterial evidence as to places on the ground here and there between the buildings and the side-track and at the north end of the buildings not burned over), the evidence was to the effect that from the railway siding at a point somewhat north of the corn house thence along the said right of way to the corner of the corn house, where the fire therein first started, the ground was all burned over. And there was evidence as to the strength and amount of the flames seen burning on the ground by the side of the corn house, as compared with those seen burning on the ground past the corn house to the south, and the ends of the ties of the side-track, all seen burning soon after the fire started

in the corn house, from which the jury was warranted in concluding that the fire was set out on the right of way of the railroad company by sparks or cinders (singular or plural), and extended to the corn house.

The evidence was that there was little or no wind, but that the flames slightly inclined from the direction of the railway track towards the buildings as they were seen burning in places across the said right of way, while the fire at the buildings was in progress.

The evidence is conflicting as to whether coals or cinders (singular or plural) would likely have been thrown from the main line railway track to the dry vegetable matter on the right of way of the railroad company aforesaid and the evidence leaves it uncertain whether sparks or cinders (singular or plural) fell on such vegetable matter. The husband of the plaintiff testified, as a witness for the latter, on this subject as follows:

"There are two ways it (the railroad company) could have set fire to the buildings. One is it may have dropped a cinder from the ash pan, and the wheels knocked it down from the track, and it rolled into the trash, which very frequently happens. It has frequently happened and one time it dropped down there and a train had to stop and put it out. And it could have set fire from a spark thrown out of the smoke stack. Either way it could have happened."

Beyond this, however, the evidence leaves it uncertain whether the fire started on the right of way of the railroad company or not. It might, consistently with the evidence, have started from a spark or sparks thrown from one or both of the engines of said freight train, falling in or next to or under the corner of the corn house, beyond the right of way of the railroad company, or from a cinder or cinders dropped and knocked by the wheels of the engine or engines and rolled into the trash on the right of way as above indicated.

## SUMMARY OF FACTS.

Under the rule applicable in this court in such case, the material facts which we must consider may have been found by the jury, and hence must be considered as found by us, may be summarized as follows:

The fire which burned the buildings aforesaid, originated from the engine or engines of the railroad company, from

(a) Coals (or cinders) dropped from one or both of the engines of said freight train, thrown by the wheels on the trash and dry vegetable matter on the right of way of the railroad company aforesaid, from which the fire burned over the ground and communicated and set fire to the corn house, etc.; or

(b) Sparks thrown from one or both of the last named engines on such trash and vegetable matter on the said right of way, from which the fire burned over the ground and communicated and set fire to the corn house, etc., or

(c) Sparks thrown from one or both of the last named engines, beyond the right of way aforesaid, within or next to or underneath (through a door in the planking underneath and near the corner of) the corn house, etc.

If the fire originated in any of these three ways it fell within the provisions of the Featherston act, and the railroad company was liable for the damages sustained by the plaintiff by reason thereof.

*Roy B. Smith* and *Marshall McCormick*, for the plaintiff in error.

*Ward & Larrick* and *F. B. Whiting*, for the defendant in error.

SIMS, J., after making the foregoing statement delivered the following opinion of the court:

We will consider and pass upon the questions raised by the several assignments of error in their order as stated below:

1. Was it error to admit evidence for the plaintiff that other engines of the railroad company at other times in the past had thrown out sparks and cinders and in some cases had set out fires at and near the locality of the buildings of the plaintiff, for damages for the burning of which this action was brought?

Before the Featherston act the law required a plaintiff, in order to recover damages against a railroad company caused by fire, to prove two things, namely, (1) That the railroad company in fact set out the fire; and (2) that the setting out of the fire was due to negligence of the railroad company.

In that state of the law, by a number of decisions of this court, it became settled, prior to the Featherston act, that, although the proof might show that a fire was set out by a railroad company, there could be no recovery therefor if the evidence failed to show the existence of negligence on the part of the railway company; and it was held as a general rule that the evidence failed to show the existence of such negligence, if it appeared therefrom (a) that the engine from which the fire originated was in good repair, in charge of a competent and experienced engineman, or locomotive engineer, that it was equipped with the best mechanical appliances in known and practical use for preventing the escape of sparks; and was not run in a negligent manner so as to unnecessarily throw out sparks and coals or cinders; and (where the fire originated on the right of way of the railroad company) (b) that the defendant exercised reasonable care to keep such right of way clear of combustible matter liable to ignition by sparks or coals

11

discharged from passing engines and to communicate fire
to the property of others. *White* v. *N. Y. P. & N. R. Co.*,
99 Va. 357; 38 S. E. 180; *N. & W. Railway Co.* v. *Briggs*,
103 Va. 105; 48 S. E. 521; *Atlantic, etc., R. Co.* v. *Watkins*,
104 Va. 154, 51 S. E. 172; *Phillips* v. *Railway Co.*, 109 Va.
437, 63 S. E. 998. The rule as to the effect of evidence
showing that the engine was in good repair, would of
course, prior to the Featherston act, have applied to the
dropping of coals or cinders and would have negatived the
existence of negligence in that regard and hence of liability
for damages for fire caused thereby.

Therefore, prior to the Featherston act, the ultimate
question of fact in issue in railroad fire damage cases was
whether the fire was *negligently set out* by the railroad
company. Upon that issue it was necessarily held that
"after the plaintiff has identified with certainty the engine
alleged to have communicated the fire complained of, it is
not admissible to introduce evidence of other fires com-
municated along the company's right of way without first
showing that the other fires were set out from the engine
in question." This was because, in the then state of the law,
*negligence* being an essential ingredient to be found to ex-
ist in a case before any liability of the railroad company
could arise, when the injury complained of was shown to
have been caused, or could only have been caused by a
known and identified engine, the evidence had necessarily
to be confined to the condition, management and practical
operation of that engine, in order to ascertain whether the
railroad company was guilty of *negligence* with respect
thereto. *N. & W. Railway Co.* v. *Briggs, supra.* Evidence
which might have been relevant as tending to prove that
the fire was in fact set out by the railway company, con-
sisting of evidence of the frequency of fires set out by the
engines of such company indiscriminately. clearly could not
be relevant to the issue in such state of the law, which was

whether there was negligence in the condition or management of the identified engine. The other engines of the railroad company may have set out fires, whether because defective in condition or negligently operated, or not, and the identified engine may have set out the fire in question, but if the latter was not defective in condition or negligently operated there was no liability upon the defendant in such state of the law. That is to say, the rule in *N. & W. R. Co.* v. *Briggs, supra,* above referred to, was established when and because in the then state of the law *negligence* was an essential ingredient and, indeed, was the gist of the action in railroad fire damage cases, and not merely the fact of the setting out of the fire. Since the Featherston act the issue in such cases does not include negligence as an essential ingredient. Such ingredient consists only of the existence of the fact of the setting out of the fire by the railroad company by sparks ·or coals (cinders) dropped or thrown from some one or more of its engines, and that, under such act, is the ultimate fact in issue; and all evidence whether circumstantial or direct, which tends to prove that issue, is admissible, and the aforesaid rule in the case of *N. & W. Ry. Co.* v. *Briggs, supra,* is no longer applicable.

The first assignment of error raising the question we have under consideration, is based on the aforesaid rule in the case of *N. & W. Ry. Co.* v. *Briggs, supra.* That rule not being applicable since the Featherston act, our conclusion necessarily is that such assignment of error is not well taken.

The ultimate issue of fact under the Featherston act being the single question whether the fire was set out or originated from sparks or coals (cinders), singular or plural, thrown or dropped from an engine or engines of the railroad company, manifestly, as above noted, any evidence tending to prove such fact is admissible. Evidence to the

effect that the engines of the railroad company indiscriminately, without exception (which would of course *prima facie* include the identified engines aforesaid), throw sparks at the locality in question, clearly was evidence tending to sustain said issue in behalf of the plaintiff and hence was admissible. It was not conclusive evidence in itself, but admissible to be weighed and considered by the jury in connection with all the other evidence in the case.

2. Was it error in the court, in its first ruling as to the admissibility of evidence of sparks and cinders being thrown out and fires started, to have said: "I think it admissible but not on the ground of showing that the engines were defective, but showing that at that point the railroad company had thrown out fire on other occasions and therefore" that it is *possible* for it to have thrown out fire at this time?

The objection to this ruling of the appellant is to the use of the word *possible* therein. It is urged that this being the first ruling of the court on the admissibility of such evidence, although the court did in later rulings on the same subject substitute the word "liable" for "possible," the first ruling was calculated, and, as appellant contends, did leave the impression on the minds of the jury, that if the evidence showed a bare possibility that the two engines in question threw the sparks, the jury might consider the evidence as sufficient to warrant their finding in favor of the plaintiff, whereas the true rule is that the evidence must be sufficient to show such fact by a clear preponderance before the jury had the right to consider it in favor of the plaintiff.

It is admitted that the trial court correctly instructed the jury on the point under consideration, by one of the instructions given after the evidence was all in, but it is insisted that this could and did not remove the erroneous impression aforesaid.

In the view we take of it, the objection to this ruling of

the court was not well taken.  It seems to us that the use
of the word *possible* was not unfavorable to the appellant.
What the court said in the ruling in question had not the
remotest reference to the matter of what it was necessary
for the plaintiff to prove in order to recover.  The court
ruled the evidence admissible on the issue as to whether
the railroad company in fact set out the fire, as consisting
of evidence of circumstances tending to prove that fact, to
the extent of showing that such fact was *possible*.  The
court did not say or indicate to the jury that if the plain-
tiff stopped there she could recover.  It was a step in her
proof, and certainly a necessary step to establish that it
was at least *possible* for the fire to have been set out by
the railroad company, before she could ask that her other
evidence be considered on the issue before the court.  The
use of the word *possible* by the learned trial judge was in-
deed but an extremely careful and guarded manner of
statement, lest he should create an impression adverse to
the appellant; and was less likely to have prejudiced the
railroad company, than the use of the word "liable" em-
ployed later on in connection with the same ruling as to the
admission of similar evidence, to which no objection is
urged.  The use of the word "liable" went farther than
"possible" in the statement of what might be the effect or
weight of the evidence ruled upon, and manifestly the use
of the word "possible" in the first instance by the learned
trial judge, was as above indicated, out of abundant pre-
caution lest he create an impression on the minds of the
jury that they might consider such evidence as going be-
yond the step of showing that the throwing out of fire by
the engines at the point in question was *possible.*

However, and further, it seems clear to us, in view of
the admittedly correct instruction given by the trial court
on this point, that it does not affirmatively appear from the
record that the jury was misled by this ruling or would or

could, in accordance with the evidence, have rendered a different verdict from what they did, and hence the error in such ruling, if there was one, was harmless. *Standard Paint Co.* v. *Vietor,* 120 Va. 595, 91 S. E. 752.

Omitting reference to the instructions which involve the question first above considered and passed upon, the questions raised by the assignment of error based upon the action of the trial court in giving and refusing instructions will now be considered.

3. Was instruction No. 3, given at the instance of the plaintiff, contradictory in terms, or calculated to mislead the jury into believing therefrom that it was instructed that the railroad company was liable, unless it appeared from the evidence that there was no other probable cause for the fire?

Instruction No. 3 referred to is as follows:

"3. (Given.) The court further instructs the jury that the burden of proof is upon the plaintiff to show by clear and affirmative testimony that the defendant set out the fire, the court telling the jury that it is not sufficient for the plaintiff to show that it was possible for the defendant to have started the fire but it must appear from the evidence that there was no other probable cause for the fire."

When read in connection with instruction No. 4, which was given by the trial court, it is clear that instruction No. 3 is not amenable to the objections urged against it which are indicated in the question under consideration. Instruction No. 4 is as follows:

"4. (Given.) The court instructs the jury that before the plaintiff can recover in this case the evidence must be such as to show more than a mere probability that the property was destroyed by sparks of fire or cinders set out by an engine of defendant company, and it is not necessary to prove it beyond a reasonable doubt. If it is shown affirmatively by a clear preponderance of the evidence that the fire

was caused by sparks or coals or cinders emitted from an engine of defendant, the proof is sufficient."

Hence this question must be answered in the negative.

4. Was it error in the trial court to refuse instruction A. offered by the railroad company?

Instruction A. referred to is as follows: "A. (Refused, except as modified in instruction given). "The court in‹ structs the jury that the burden of proving that the fire complained of in the plaintiff's declaration was caused by the engine or engines of defendant company is on the plaintiff and must be proven by a preponderance of all the testimony to the satisfaction of the jury. It is not sufficient for the plaintiff to show a probability that the fire was so caused, nor can the jury presume from the happening of the fire that it was caused by the defendant company's engine or engines. In other words, the court means to tell the jury that it is incumbent upon the plaintiff to show how and why the fire occurred, and the plaintiff cannot leave the jury to the determination of the question by conjecture, guess or random judgment or upon mere supposition."

The provisions of this instruction were substantially and fully covered by instructions Nos. 1, 3 and 4 given by the trial court. Instructions Nos. 3 and 4 are above quoted. Instruction No. 1 was as follows:

"1. (Given.)   The court instructs the jury if they believe from the evidence that the plaintiff in this case sustained damage from a fire occasioned by sparks, cinders or coals emitted or thrown from an engine of defendant, as alleged in the declaration, and that the defendant was a railroad company at the time of the said fire, then the plaintiff is entitled to recover of the defendant the damage so sustained at the date of the fire; and the plaintiff would be entitled to recover such damage without any reference to any insurance collected by the plaintiff."

Counsel for the railroad company say in this connection:

"We invoke the principle again that when an instruction prepared by counsel for either party states a correct principle of law, then the party offering it is entitled to have it given in the language employed in it." This principle is subject to the well-settled qualification that when the jury have been fully and sufficiently instructed on a given point or points in a case, it is not error to refuse other instructions, though correct, on the same point or points. *Luck, etc., Co.* v. *Russell County,* 115 Va. 335, 79 S. E. 393; *Bowman* v. *First Nat'l Bank,* 115 Va. 463, 80 S. E. 95; *Ney* v. *Wrenn,* 117 Va. 85, 99, 84 S. E. 1; *Eastern Motor Co.* v. *Apperson-Lea Co.,* 117 Va. 495, 85 S. E. 479; *Smith* v. *Stanley,* 114 Va. 117, 130, 75 S. E. 742; *Cutchin* v. *Roanoke,* 113 Va. 452, 74 S. E. 403. As stated by this court in *Wygal* v. *Wilder,* 117 Va. 896, 901, 86 S. E. 97: "The practice of diminishing instead of multiplying instructions unnecessarily is rather to be commended than condemned."

In regard to the following named provision in said instruction A., to-wit, "Nor can the jury presume from the happening of the fire that it was caused by the defendant company's engine or engines," it should be said that this unquestionably enunciated a correct proposition of law. It could have had no helpful effect, however, if such an instruction had been expressly given in the instant case. It does not appear that the jury were asked in such case to apply such a presumption. On the contrary instructions Nos. 1, 3 and 4 clearly instructed them as to the law which negatived any such presumption. Moreover the instant case was not one in which the plaintiff was left by the evidence to rely upon such a presumption. She had other evidence in her behalf on the point. Hence the giving of such an instruction in such a case would have been confusing and misleading to the jury.

Therefore there was no error in the refusal of the trial court to give such instruction.

5. Was it error in the trial court to refuse instruction B. offered by the railroad company?

Instruction B. referred to is as follows: "B. (Refused as embraced in instruction given.)    The court further instructs the jury that if it believes from the evidence that the fire complained of may have resulted from one of two causes, for one of which defendant is responsible, but not for the other, the plaintiff cannot recover, nor can the plaintiff recover if it is just as probable that the fire was caused by the one as by the other cause."

There was no evidence in the case to support this instruction.    There were only two causes (cinder or spark) for, and two ways of the setting out of, the fire, as it in fact occurred—(by origin on the right of way of the railway company or beyond it) as disclosed by the evidence (as above set forth in the summary of facts).    For any *and all* of these the railroad company was responsible and liable in damages under the Featherston act, if the fire occurred in any or all of such ways.    The rule invoked by the instruction, while well settled, has, therefore, no application to the instant case.

The instruction under consideration was evidently offered under the assumption that the evidence tended to show that there was still another cause for the fire, namely, that it was caused by the carelessness of boys playing cards in the buildings.    There is no such fact testified to or shown in evidence, however, in the case.    The only reference to any such matter is in the testimony of the husband of the plaintiff.    He says that when he saw the fire "I started down to investigate *thinking* some boys might be playing cards." But what he saw on his arrival at the fire and the other evidence in the case entirely excluded any such hypothesis being supported by or being consistent with the evidence.

Hence this instruction was also properly refused.

6. Was it error in the trial court to refuse instruction C. offered by the railroad company?

Instruction C. referred to is as follows: "C. (Refused as covered so far as proper by instructions given.)    The court further instructs the jury that if the plaintiff fails to establish by affirmative proof sufficient to satisfy reasonable and well-balanced minds any one fact necessary to prove that the fire was set out by the defendant company, they shall find for the defendant."

The provisions of this instruction were substantially and fully covered by other instructions given by the trial court. What is said above on this subject in connection with instruction A., refused by the trial court, is deemed equally applicable, *mutatis mutandis,* to the instruction now under consideration.

Hence there was no error in the refusal of this instruction.

We come now to the question raised by the only remaining assignment of error which we have not passed upon, namely:

7. Was there error in the refusal of the trial court to set aside the verdict of the jury and grant a new trial?

The above statement of evidence deemed to be material, and the above summary of facts, sufficiently answer this question in the negative, and a discussion thereof, it is believed, would needlessly prolong this opinion.

For the foregoing reasons we find no error in the judgment complained of and it will be affirmed.

*Affirmed.*