# Richmond.

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY *v.* CATLETT.

### January 24, 1918.

#### Absent, Burks and Kelly, JJ.

1. PRESUMPTIONS AND BURDEN OF PROOF—*Sufficiency of Evidence to Establish Fact.*—A fact cannot be established, whether by direct (testimonial) or circumstantial evidence unless there is some evidence which has some logical probative value to establish the fact.

2. PRESUMPTIONS AND BURDEN OF PROOF—*Sufficiency of Evidence to Establish Fact—Preponderance of Evidence Rule.*—In civil cases the reasoning to establish a fact is not required to measure up to the exclusion of every other hypothesis consistent with the evidence; and it is required only that the fact considered as established be the more probable hypothesis from the evidence with reference to other hypotheses predicated upon the evidence—that is to say, in civil cases, a fact may be established by a preponderance only of the evidence. But the preponderance of the evidence rule does not dispense with the requirement that there must be some evidence which has some logical probative value to establish a fact, before that fact can be even considered as a possible hypothesis predicated upon the evidence—*a fortiori*, before it can be considered as the more probable hypothesis from the evidence.

3. EVIDENCE—*Preponderance of Evidence—Injury which may have Resulted from One of Two Causes.*—When damages are claimed for injuries which may have resulted from one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of the evidence.

4. WATERS AND WATERCOURSES—*Malaria—Mosquitoes—Two Causes.*—In an action for damages against a railroad company caused by the illness of plaintiff and family from malaria, which

plaintiff alleged was occasioned by mosquitoes bred in stagnant water in an old canal bed, which by an act of Assembly it was the duty of defendant railroad to drain, the evidence for the plaintiff did not go beyond proving by a preponderance of it, that the water in the canal bed was the most favorable place for the production of mosquitoes. It also appeared from the plaintiff's evidence that the water in other places near by was favorable for the production of a sufficient number of mosquitoes to have caused the malaria complained of. There was no evidence to show that the one breeding place was more probable than the other of the mosquitoes which caused the malaria complained of, except the fact that more mosquitoes were probably bred in the water in the canal bed than in the water in the other places.
Held: That, a verdict for plaintiff upon this evidence must be set aside and annulled and a new trial granted.

5. PRESUMPTIONS AND BURDEN OF PROOF—*Circumstantial Evidence— Inference from a Presumption.*—The inference that the mosquitoes which caused the malaria complained of were bred in the bed of the old canal was not proved as a fact in the case, and in the very nature of the subject under the circumstances of the instant case could not by any possibility have been so proved. In such case, the rule that "an inference cannot be drawn from a presumption, but must be founded upon some fact legally established," applies. See *Chesapeake and Ohio Railway Company* v. *Ware, post,* 246, 95 S. E. 183.

6. WATERS AND WATERCOURSES—*Drainage—Mandamus.*—By an act of Assembly it was the duty of defendant railroad to drain an old canal bed, so as not to leave stagnant water by which the health of the citizens along the line of the canal might be injuriously affected.
Held: That, the discharge of the duty in question could be fully enforced, if need be, by the appropriate remedy of mandamus.

Error to a judgment of the Circuit Court of Fluvanna county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

STATEMENT OF THE CASE.

The defendant in error (hereinafter referred to as plaintiff), recovered a verdict in the court below against the plaintiff in error (hereinafter referred to as defendant) for

30

damages during the period covered by the suit, to-wit: from June 1, 1915, to March 25, 1916, caused by the illness of the plaintiff and family from malaria which the plaintiff alleges was occasioned by stagnant water in the old canal bed which an act of Assembly of Virginia made it the duty of the defendant to so drain as not to leave stagnant water by which the health of the citizens along the line of said canal might be injuriously affected.

The trial court refused to sustain the motion of the defendant to set aside the verdict and grant a new trial, and the sole question involved in the appeal is whether, under the rules applicable in the appellate court in such case (the evidence and not the facts being certified), there was sufficient evidence to sustain the finding of the jury that the malaria in question was caused by the stagnant water aforesaid. On this question, regarding the evidence as upon a demurrer thereto by the defendant, the following are the material facts:

## THE FACTS.

By act of Assembly (Acts 1878-9, p. 118), the legislature of Virginia authorized the Richmond and Alleghany Railroad Company to purchase the old James River and Kanawha canal and to construct a railroad along its line and abandon the canal, but with the following provision and condition:

"The said * * * railroad company shall, as fast as they abandon the said canal, so drain the same as not to leave stagnant water by which the health of the citizens along the line of the canal might be injuriously affected."

The defendant is the successor in title of the Richmond and Alleghany Railroad Company and admits its duty to keep the bed of the old canal drained as required by said statute.

The plaintiff and family occupied a store house and dwelling combined between twenty-five and thirty feet from the old canal bed (according to one witness for plaintiff), from early in May, 1914, until this suit was instituted, March 25, 1916. This house was also located between two branches, both of which were about the same distance from the house, to-wit (as one witness stated it most extremely for the plaintiff) about "twenty steps" from it. One of these branches started from a spring in the side of the hill about the latter distance from the house. This stream ran through a small pool or watering place for horses by the side of the public road near the spring, about as large as a "washtub," thence on in front of plaintiff's house into the other branch. The other of these branches, which was larger, was also a spring branch, coming down from the hills near by with a considerable fall, thence, after reaching the low grounds and being joined by the first named branch, it passed around along at the back of plaintiff's house into the old canal bed. The privy of plaintiff was near the bank of the latter branch about fifty yards from the rear of his dwelling (according to one witness for plaintiff) and drained into the branch. There was not much fall in the larger branch as it passed near plaintiff's house, and while the water in it was fresh it moved in this locality sluggishly, with still water along its margin in places; and where the public road which passed in front of plaintiff's house crossed this stream, about fifty yards from the house, the mud thrown up from ruts cut by wagon wheels in passing over the road had a tendency to obstruct the stream, and following much rainfall the water would stand at this place, and (as the wife of plaintiff testified) would "become a sheet of water and people in the community would complain of it in going to the depot and getting their traffic out. The whole road would become a sheet of water * * *." The plaintiff himself testified, however, and so did his wife at another point

in her testimony, that they could by clearing off the mud from the road prevent the last named ponding of the water, and that the custom was invariably to do so when they found the water was ponding there.

The water in the bed of the canal near plaintiff's house was not well drained off and was very stagnant and of much greater extent of surface in 1914 and 1915 than the still water in said branches, horse-watering place and spring near plaintiff's house.

In the year 1913, plaintiff and family lived in a different house from that above referred to, but only about "twenty steps" therefrom, and hence lived then in practically the same locality as in 1914 and 1915.

In 1913 the canal bed above referred to was kept well drained by defendant, and there were no mosquitoes present and no malaria in plaintiff's family. The evidence is silent as to whether there was much or little wet weather that year.

In 1914 such canal bed was not well drained, the ditch of defendant draining it being partly filled by washings from the hills brought down by the larger branch above named, and there was very little stagnant water which accumulated in such canal bed, but there were "millions of mosquitoes" present, and yet there was no malaria in plaintiff's family. There was not much wet weather that year.

In 1915 such canal bed was not well drained, the ditch aforesaid was more filled by the washings aforesaid, and there was stagnant water of greater quantity and surface than in 1914 which accumulated in such canal bed, there were "millions of mosquitoes" present, and there was the malaria in plaintiff's family. There was a great deal of wet weather that year.

The plaintiff's wife and daughter were taken sick with malaria in the latter part of July or first part of August,

1915, and did not recover until cold weather in December of that year.

Defendant opened its ditches and well drained the canal bed referred to in August or September, 1915, and the canal was kept well drained by defendant from that time to the time of the trial of the case in the court below.

Plaintiff and his son were taken sick with malaria, in about three weeks of each other, about October, 1915, and recovered by the middle of December following.

At the time of the trial of the case in the court below, on June 27 and 28, 1916, there had been no return of malaria in any of plaintiff's family since their recovery from their sickness in December, 1915.

It is conceded by counsel for plaintiff as fully established by the evidence "that malaria is transmitted by the anopheles mosquito; (that) this mosquito must first derive the malarial germ from some person affected with malaria and then transmit it by inoculation to some other person." There is another species of mosquito, the culex, which the evidence shows does not transmit or cause malaria.

Dr. Harris, one of the physicians who attended plaintiff's family and also prescribed for plaintiff during their said illness, had examined the old canal bed aforesaid, but had not examined the spring and branches. He testified among the witnesses for plaintiff, and was asked a hypothetical question which covered the condition of the water in the spring and branches. The question concluded as follows:

"Given those conditions and the conditions that you saw in the canal bed, where would you say this malaria Mr. Catlett and his family had originated?"

His answer was as follows:

"That is a hard question for anybody to answer, because the malarial mosquito may breed anywhere, might travel

most any distance; and it depends upon how long it might be between rains and between the stagnant water on the branch or around the spring or anywhere else; but from all the conditions I saw, not seeing the branch, I consider they would breed in the most favorable place, in the canal. That would be the best answer I can give."

The following should also be quoted from the continuation of the testimony of this witness:

By Mr. Moon:

"Q. Is it your opinion from what you saw there that this malaria came from the canal?

"A. From what I saw.

\*    \*    \*    \*    \*    \*    \*    \*    \*

ON CROSS-EXAMINATION.

"By Mr. Leake:

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Isn't the still side pools of small streams, or swampy pools at the margin of ponds, or stagnant water in ditches, or beds of old canals, or the still water at the sides of a spring, and occasionally, though rarely, in old horse troughs —isn't that condition favorable for the production of the anopheles mosquito; or standing rain water, either standing on the ground or in receptacles?

"A. Yes, sir.

"Q. In fact anywhere water stands? .

"A. Yes, sir, anywhere water stands will breed mosquitoes.

"Q. So that if, around a house such as Mr. Catlett's, there were conditions such as that in detail as you have just stated would be favorable to the breeding of mosquitoes, other than the old canal bed, would it be possible for you or anybody else to say which mosquito bit Mr. Catlett and his family?

"A. No, sir.

REDIRECT EXAMINATION.

"By Mr. Moon:

"Q. Doctor supposing the conditions, which I detailed in my former hypothetical question, around the spring and along those branches and the horse-watering place and his privy, on the one hand, and the conditions that you said in the canal bed on the other, which would you say would be the more favorable for the production of mosquitoes?

"A. I would consider the canal the most favorable place."

It is shown by the evidence of the physician who testified for the defendant that "It is not the number of mosquitoes that gives a man malaria; it is not the bites you get. One will do it; of course, two will do it a little better if both of them are loaded with the malarial parasite." And there is no conflict in this testimony with any evidence introduced for the plaintiff. It is in accord with the evidence for the plaintiff.

SUMMARY OF FACTS.

The evidence for the plaintiff in this case does not go beyond proving by a preponderance of it, that the water in the canal bed in 1915, prior to its drainage in August or September of that year, was the most favorable place for the production of mosquitoes.

Such evidence also proves that the water in other places near by was favorable at such time for the production of a sufficient number of mosquitoes to have caused the malaria complained of, and that no logical conclusion of the whereabouts of the breeding place of the mosquitoes which caused the malaria complained of can be drawn from the fact that one place bred more than another.

The evidence establishes the further fact that the year 1915 was one of unusually wet weather.

*D. H. & Walter Leake* and *Henry Taylor, Jr.,* for the plaintiff in error.

*Moon & Pitts,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The instant case turns upon the question,—

1. Is there any probative evidence in the case tending to establish the fact that the breeding place of the mosquitoes which were the cause of the malaria complained of was the old canal bed aforesaid?

The question must be answered in the negative.

A fact cannot be established, whether by direct (testimonial) or circumstantial evidence unless there is some evidence which has some logical probative value to establish the fact. 1 Wigmore on Ev., secs. 20, 31, *et seq.*

It is very true that in civil cases the reasoning to establish a fact is not required to measure up to the exclusion of every other hypothesis consistent with the evidence; and it is required only that the fact considered as established be the more probable hypothesis from the evidence with reference to other possible hypothesis predicated upon the evidence—that is to say, in civil cases, a fact may be established by a preponderance only of the evidence. *Woods' Adm'x* v. *Southern Ry. Co.,* 104 Va. 650, 52 S. E. 371, and almost innumerable other cases which might be cited. But the preponderance of the evidence rule does not dispense with the requirement that there must be some evidence which has some logical probative value to establish a fact, before that fact can be even considered as a possible hypothesis predicated upon the evidence—*a fortiori,* before it can be considered as the more probable hypothesis from the evidence.

In other words, the preponderance of the evidence rule can operate only upon hypotheses to establish which there is some evidence in the case of some logical probative value. No other hypothesis can be for a moment considered under this rule. The instant it is discovered that there is no evidence of any logical probative value to establish a given or suggested hypothesis, that instant such hypothesis must be discarded from consideration as a fact. So, in the instant case, as to the hypothesis that the breeding place of the mosquitoes which were the cause of the malaria complained of was the old canal bed aforesaid. As appears from the above statement of facts and summary of facts, the evidence in the instant case has no logical probative value to establish the fact that the breeding place of the offending mosquitoes was the old canal bed. At most, the evidence cannot go beyond establishing that the mosquitoes which caused the malaria complained of were probably bred, either in the water of the old canal bed (for which the defendant was responsible), or in the water of other places near by (for which the defendant was not responsible). Now, as bearing on the question whether it is more probable that the mosquitoes bred in the water of the old canal caused the malaria, or those bred in the other near-by places, we have only the isolated *datum*, or the sole fact that more mosquitoes were bred in the former place. If the number of the mosquitoes bred were a determining factor on this question, we would, of course, conclude that the mosquitoes bred in the former place were the more probable cause of the malaria. But we have the direct evidence in the instant case, above mentioned, that the number of the mosquitoes bred is not a determining factor on such question. We have, moreover, the obvious fact that evidence of mere numbers of mosquitoes bred in a given place can have no probative value whatsoever to identify the breeding place of the offending mosquitoes, when there were other places, equally probable

as places of origin, where mosquitoes as shown by the evidence were probably bred in sufficient numbers to have caused the malaria.   And it inheres in the very nature of the case that this is so.   It is necessarily so because the identity of the breeding place of the insects in question is lost in the obscurity of their own utter lack of known or ascertainable marks or characteristics (if any such exist) by which those bred in one place may by any possibility be distinguished from those bred in another place, when we have the data aforesaid furnished by the evidence of different places from which it was equally as possible and probable that they came in sufficient numbers to have caused the malaria.   There is, therefore, no evidence in the instant case to show that the one breeding place was more probable than the other of the mosquitoes which caused the malaria complained of.

In other words, in the instant case, the verdict of the jury in finding the fact in question was necessarily based upon "conjecture, guess or random judgment upon mere supposition."   *Chesapeake and Ohio Railway Co.* v. *Heath,* 103 Va. 64, 66, 48 S. E. 508.   The inference that the mosquitoes which caused the malaria complained of were bred in the bed of the old canal was not proved as a fact in the case, and in the very nature of the subject under the circumstances of the instant case could not by any possibility have been so proved.   In such case, the rule that "an inference cannot be drawn from a presumption, but must be founded upon some fact legally established," applies.   (See *Chesapeake and Ohio Railway Company* v. *Ware, post* 246; 95 S. E. 183, in which the opinion of this court is handed down at the present term.)

What has been said above is crystalized and stated in another way in the following rule referred to by Buchanan, J., in delivering the opinion of this court in *Norfolk and Western Railway Company* v. *Poole,* 100 Va. 148, at pp.

153-4, 40 S. E. 627, at p. 629: "When damages are claimed for injuries which may have resulted from one of two causes, for one of which the defendant is responsible and for the other of which it is not responsible, the plaintiff must fail if his evidence does not show that the damage was produced by the former cause. And he must also fail if it is just as probable that the damages were caused by the one as by the other, since the plaintiff is bound to make out his case by the preponderance of the evidence."

Counsel for the plaintiff make use of the arguments known in logic as the "method of agreement" and "method of difference," and urge with much force and ability that in 1913 when the canal bed was kept well drained, there were no mosquitoes and no malaria; that in 1914, contemporaneously with stagnant water in the canal bed, "millions of mosquitoes appeared and this continued throughout the remainder of the year 1914 and the year 1915, until this stagnant water was removed by appellant by. drainage, and as soon as the stagnant water in the canal was removed, the mosquitoes disappeared," and that appellee and his family "as soon as the stagnant water was drained from the canal bed and the mosquitoes disappeared * * * recovered from their malaria and have had none since." But the infirmity of these methods of argument, as justly observed and in substance expressed by Mr. Wigmore in his learned and valuable work on Evidence, lies in this, that the failure of the phenomenon to occur in any single instance, when the data relied on to produce it are present, or its occurrence in a single instance, when the data relied on to produce it are absent, is fatal to the argument. In 1913, it is true, the mosquitoes and the stagnant water in the canal were not present, and the phenomenon of the malaria in plaintiff's family did not occur; but in 1914 this data, to the extent of producing "millions of mosquitoes," were present, and the phenomenon of the malaria

did not occur. Again, in 1915, the data of the stagnant water in the canal and the "millions of mosquitoes" were present and the phenomenon in question did occur; but this single instance is offset by the experience aforesaid of 1914, when with the same data aforesaid then present, such phenomenon did not occur. And as to the disappearance of the mosquitoes and the malaria when and since the canal was well drained, the position of counsel for plaintiff is not precisely accurate. The plaintiff and his son were not taken sick with malaria until after the canal was well drained in August or September, 1915, and at such a length of time after that time that it would seem to be indicated by a preponderance of the evidence that they were not infected by mosquitoes from the canal bed but from mosquitoes bred at some other place. Certainly this must have been so if all the mosquitoes from the canal bed disappeared as soon as it was drained, which was in August or September, 1915. Here again in the absence of the data relied on by plaintiff to produce the phenomenon, we find that the phenomenon occurs. And as to the non-recurrence of the sickness from malaria since the recovery of plaintiff and his family, this was brought out in evidence on the trial in June, 1916. The malarial illness complained of in 1915 did not begin until the latter part of July or first of August. No logical argument, therefore, could be based on its non-recurrence when only the period of June in 1916 had been reached.

Moreover, the argument of counsel for plaintiff ignores the further data furnished by the evidence, that there was unusually wet weather in 1915 when the malaria in question occurred, which probably introduces the presence or absence of unusually wet weather conditions into the problem of ascertaining the more probable cause of the malaria. However, the evidence is meagre on this subject, as it is upon the subject of other data necessarily entering into the

problem, and is plainly insufficient to warrant any reliable conclusion based upon evidence of facts.

As the physician who testified as an expert witness for the plaintiff, in effect, frankly said, concerning the instant case as disclosed by all the evidence for plaintiff, it was impossible for the witness or anyone else to say whether the mosquitoes, which bit Mr. Catlett and his family, and caused the malaria complained of, were bred in the old canal bed or elsewhere; so we are compelled to say from this evidence.

It is urged in behalf of the plaintiff that the result of such a holding in the instant case will be to set at naught the requirement of the statute above mentioned that the defendant shall so drain the old canal bed "as not to leave stagnant water by which the health of the citizens along the line of the canal might be injuriously affected." We do not so regard the case. The discharge of the duty in question can be fully enforced, if need be, by the appropriate remedy of mandamus.

For the reasons stated above, the verdict and judgment complained of must be set aside and annulled and a new trial granted in accordance with the prayer of the defendant, to be had, if the plaintiff is so advised, not in conflict with the views expressed in this opinion.

*Reversed.*