# Richmond

## SOUTHERN RAILWAY COMPANY v. AMERICAN PEANUT CORPORATION AND OTHERS.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Gregory, JJ.

The opinion states the case.

*Thomas B. Gay* and *James H. Corbitt*, for the plaintiff in error.

*E. Peyton Turner* and *Buford & Raney*, for the defendants in error.

GREGORY, J., delivered the opinion of the court.

The American Peanut Corporation, suing in its own right and for its own benefit, as well as for the benefit of a number of insurance companies, instituted its action by way of notice of motion for judgment against the Southern Railway Company to recover of the railway company $32,316.85 with interest, for damages which it claimed to have sustained by reason of the loss of a quantity of peanuts which were stored in a warehouse known as the "Hull House." This building was located just outside of the corporate

limits of the town of Emporia and the building and the peanuts were destroyed by fire, alleged to have been occasioned by sparks thrown from a certain locomotive engine of the railway company. The jury rendered a verdict against the railway company for the full amount claimed and the trial court approved the verdict.

The American Peanut Corporation will be referred to as the plaintiff and the Southern Railway Company as the defendant, the respective positions occupied by the parties in the trial court.

On April 11, 1929, when the fire occurred, the Southern Railway Company, the defendant, was operating a railroad between Danville and West Norfolk, Virginia, passing through the town of Emporia, Virginia, and within fifty feet of the Hull House. The defendant maintained at the time a water tank which was located 1,676 feet east of the Hull House and from that point to the Hull House there is a slight up grade. In the early morning of April 11th, at one twenty-nine o'clock, a west-bound freight train passed the Emporia station, stopped at the tank for water, remained there for that purpose between five and six minutes, and then proceeded at a speed of approximately ten to twelve miles per hour in a westward direction passing the Hull House. Within approximately thirty minutes after the train had passed the Hull House the fire was discovered by the night watchman, which was described by him as being "no bigger than a blaze from a lantern."

The Hull House had been erected by the Emporia Cotton Seed Oil Corporation for storing cotton seed hulls while the oil mill was in operation. The building had been erected on land leased to the said Cotton Seed Oil Corporation from the Citizens National Bank of Emporia and G. L. Vincent, Jr., executor of the estate of G. L. Vincent, deceased. The building was owned by the said oil corporation and a small portion of it was located upon the right-of-way of the

defendant railroad company. The defendant had allowed the building to remain upon its right of way by reason of a certain contract it had with the Emporia Cotton Seed Oil Corporation. This contract provided that the Emporia Cotton Seed Oil Corporation would not transfer or assign the use and occupancy of the building without the written consent of the defendant. Among the numerous provisions in this contract appears one which releases the defendant from damages in case a fire occurs from the sparks from its locomotives. Upon the trial of the case the court refused to permit this contract to be introduced in the evidence and this is made the subject of one of the assignments of error, but as will be seen later it is not necessary to pass upon the court's ruling on this point.

On December 6, 1928, the Emporia Cotton Seed Oil Corporation, having ceased to use the Hull House for storing cotton seed hulls, leased the building to the plaintiff for the storage of its peanuts.

There are thirteen assignments of error, but in our view of the case it will only be necessary to pass upon the first assignment, which brings in question the sufficiency of the evidence to sustain the verdict and judgment.

■ If the evidence shows that the fire was occasioned by sparks or coals emitted or dropped from the defendant's engine or train then the defendant is liable regardless of whether it was negligent or not, for Code section 3992 provides:

"Whenever any person shall sustain damage from fire occasioned by sparks or coals dropped or thrown from the engine or train of any railroad company, such company shall be liable for the damage so sustained, whether said fire shall have originated on said company's right of way or not, and whether or not such engine is equipped with proper spark arresting appliances, and regardless of the condition in which such appliances may be."

This section of the Code has been construed and applied by this court in several cases, among them *N. & W. Ry. Co.* v. *Spates*, 122 Va. 69, 94 S. E. 195; *Virginian Ry. Co.* v. *London*, 148 Va. 699, 139 S. E. 328.

It is necessary to look to the evidence and ascertain if it shows that the defendant was responsible for the origin of the fire by sparks or coals emitted or dropped from its locomotive or train as it passed the Hull House just before the fire was discovered. The burden of proof on this material point rested upon the plaintiff. It was required to prove by a preponderance of the evidence that the fire was set out by the defendant. This, of course, could have been done by circumstantial evidence.

The evidence shows that the train passed the Hull House about thirty minutes before the fire was discovered and when discovered it was "no bigger than a blaze from a lantern;" that the train was moving at the rate of ten to twelve miles per hour, up grade, from the tank to the Hull House, a distance of 1,676 feet but that the grade ascended on an average of four inches in each 100 feet and was considered a "very light grade;" that the locomotive was laboring and had been fired between the tank and the Hull House but the engineer testified the engine was "working moderately;" that the weather had been dry except that just before the fire there had been a slight rain; that a mild wind was blowing from the defendant's tracks in the direction of the Hull House; that the fire was discovered in some lattice work about twenty-five feet from the ground on the end of the building next to the railroad tracks; that no current of electricity was connected with the building and no fire used in or about the premises; and that a night watchman was employed to watch the property and was on duty when the fire occurred.

There is an entire absence of any evidence that the engine was emitting sparks or dropping coals as it passed

the Hull House. No witness testified that sparks were emitted by the engine just before it reached the Hull House or as it passed there or at any other time during the trip from Norfolk to Lawrenceville, the destination of the train. The engineer testified that any engine will throw sparks when it is working but not sufficient to set anything afire. He further testified that when an engine does throw sparks it is the engineer's duty to make a report of it, and that he made no such report in this instance because there were "no indications of it throwing fire."

The fireman testified that it was his duty to look out for sparks but that it was possible for sparks to be emitted from an engine and he would not see them, but that if he does see any sparks he reports the fact to the engineer who in turn makes a report of it when he arrives at the terminal. He further testified that he did not see any sparks on the occasion in question large enough to set out a fire and therefore made no report on the subject to the engineer.

There is testimony which shows that on prior occasions engines did emit sparks when passing near the Hull House but as before stated no witness saw any sparks being thrown from the engine which was charged with setting out the fire for which this action was brought.

The undisputed evidence is that the engine was equipped with a spark arrester and that it was inspected on April 7th, just a few days before the fire, and again on April 12th, one day after the fire, and at the time of both inspections it was found in first-class condition.

We conclude that the evidence is insufficient to support the verdict and the judgment. It fails to show that the defendant's engine or train was responsible for the origin of the fire.

Counsel for the plaintiff relies upon the case of *N. & W. Ry. Co.* v. *Spates, supra,* but the facts in that case were entirely different from the facts in the present case. There

the evidence for both the railway company and the plaintiff "agreed" that all the engines of the railway company threw sparks in the vicinity where the property was situated which was destroyed by fire, when the steam was not shut off, whether going north or south. The evidence further showed that on many occasions just before the fire sparks and cinders were thrown out by the engines near the building; that sparks and cinders would fall on the tin roof of one of the buildings to such an extent that at one time the plaintiff shoveled a bushel of them off the roof. It was further shown that in the intervening space on the right-of-way of the railway company between its siding and one of the buildings which was destroyed "the ground was all burned over," and that the jury was warranted in concluding that the fire was set out on the right-of-way by sparks and cinders and extended to the corn house, one of the buildings which was destroyed.

In the case of *Virginian Ry. Co.* v. *London, supra,* the plaintiff's barn was located just across an alley from the defendant's "field" on which it placed its engines to be held "fired up" and ready for use. Four spur tracks held four engines on the night of the fire; all of them had fire in them and the first engine was forty-nine feet, the second engine eighty-five feet, the third engine 114 feet and the fourth engine from 114 to 175 feet from the barn. Engines placed on these spur tracks often emitted sparks which fell on and around the barn and even over into Jefferson street which was 100 feet farther from the engines than the barn. High pressure blowers were used to start the fire in the engines and when they were attached, not only sparks and cinders were thrown out, but flames came from the smoke stacks. It was further shown that the sparks and coal had burned clothes on a line in a yard adjoining the barn and that other fires occurred near by from the sparks of the engines.

In the present case it was not sufficient for the

plaintiff to show that a fire occurred in the Hull House shortly after the train passed. The burden rested upon it to go further and show that the fire was set out by sparks or coals emitted or dropped by the engine or train. It was not the duty of the defendant to account for or explain the origin of the fire. The most that can be made of the evidence is that an unexplained fire occurred which destroyed the Hull House and its contents. To affirm the judgment in this case would, in effect, be to hold a railroad company liable in any case where the evidence shows no more than the occurrence of a fire shortly after a train has passed and place upon the company the burden of proving that the fire was set out by or through some other agency. It would in effect be to reverse the burden of proof and place upon the railroad company the duty of accounting for and explaining the origin of every fire which might occur on its line.

We, therefore, are of the opinion that the judgment complained of should be reversed, and we now enter judgment for the defendant.

*Reversed.*