# Richmond

C. D. KENNY COMPANY, INC. v. WILLIAM J. DENNIS.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Sinnott & May* and *Benjamin R. Bruner*, for the plaintiff in error.

*Joseph Sharove* and *Harold H. Dervishian*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

C. D. Kenny Co., plaintiff in error, defendant in the lower court, by this writ of error, is seeking to obtain a reversal of a judgment in the sum of $2,250 entered against it in a tort action.

The only error assigned is to the ruling of the trial court in refusing to set aside the verdict and enter judgment for defendant.

It is conceded that William J. Dennis, who was employed by the Old Market Garage as a "handy-man," whose duties were to assist in work on cars, wash and grease vehicles, and to fix and inflate tires of the patrons, or customers, of his employer, received a severe injury while inflating a truck tire owned by the C. D. Kenny Co., one of the regular customers of his employer. The question is whether or not

the C. D. Kenny Co., against whom he instituted this action, is legally responsible for the injuries sustained.

On May 3, 1933, James Lewis, who was employed by defendant to perform the duties of a porter and an extra chauffeur, while operating one of defendant's trucks, had a puncture in a tire of the truck. Lewis, at the company's place of business in the city of Richmond, took the rim and tire off the wheel, and repaired the puncture. He put the tube in the casing, and the casing back on the rim. This type of rim has four separate parts, the main rim, two circular metal flanges (one to fit on the back side of the main rim, and one on the front side), and a circular piece of steel known as a lock rim. The ends of this lock rim have a tendency to overlap unless held in their position by some pressure from inside the circle. This lock rim fits in flanges or grooves moulded in the main rim, and the front side rim. The pressure from the inflated tire presses the casing against the front side rim, which in turn presses against the lock rim. The lock rim, when fitted in the flange, or groove, prevents the front side rim and tire from slipping off the main rim.

Lewis, called as a witness for plaintiff, stated that after he had repaired the tube he had some trouble in getting the lock rim to fit in the groove on the main rim, as it seemed to be somewhat sprung when he attempted to assemble the parts, but he finally got it in place with the use of a hammer and a screwdriver, so that it appeared to him that "it (the lock rim) was fitted in (the groove in the main rim) in perfect shape, after I got it (the assembled parts) back together again."

For the purpose of inflating the tire, Lewis rolled it about a block and a quarter, from his master's place of business to the Old Market Garage, and there he used the hose from the compressed air tank to put some air in the tire. After he had done this, he called Dennis to his assistance. By the use of an air guage, Dennis ascertained that there was something less than 30 pounds of air pressure in the tire. Lewis then handed the air hose to Dennis, telling him that he wanted 80 pounds of air pressure, and requested him to inflate the tire to that amount. Dennis applied the nozzle of the air

hose to the valve stem in the tire. After a moment or two an explosion occurred, and the lock rim and front side rim flew off the main rim, and one or the other, or both, struck Dennis in the face knocking him unconscious and inflicting severe injuries, for which he seeks recovery in this action.

There is no direct evidence showing the real cause of the lock rim and side rim coming off the main rim. The rim in question is a standard type rim in general use. Plaintiff introduced several experts who testified that if all the parts had been in perfect condition and properly assembled, it would have been impossible for the metal rings to come off the main rim; that slight air pressure in the tire might have forced them off because of any of six causes: 1. The lock rim was not properly fitted in the groove; 2. Defective material used in manufacture; 3. Rust in the groove; 4. Rust on the lock rim; 5. Damage to the lock rim; 6. Damage to the groove.

■ ■ This evidence fails to fasten any responsibility on the defendant for injuries to plaintiff. Where the evidence shows that any one of several things may have caused the injury, for some of which defendant is responsible, and for some of which defendant is not responsible, and leaves it uncertain as to what was the real cause, then plaintiff has failed to establish his case.

■ ■ Negligence is a breach of a legal duty owed by one person to another, or a failure to exercise that degree of care or caution for the safety of others that a reasonable and prudent man would, and does exercise, under like circumstances. In the present case plaintiff has not only failed to establish which one of several things caused the steel rings to fly off and hit him, but he has failed to establish a breach of duty owed him by defendant.

There was no contractual relations between plaintiff and defendant. Dennis and Lewis were employed by different masters. A part of the duties that each was employed to perform, was to fix punctures and mount tires on rims of motor vehicles—Lewis to do this work on tires of trucks owned and used by his master; Dennis to do the same work

on tires of motor vehicles owned by the patrons and customers of his master. Both were familiar with the type of rim and tire involved in the accident. If the lock rim was improperly placed on the main rim, it was just as obvious to Dennis as it was to Lewis. He knew how it ought to fit, and its tendency to slip out of place when it was not properly fitted. As heretofore stated, Lewis testified that the lock rim appeared to him to fit perfectly. Dennis corroborates this. His testimony is as follows:

"Q. Had you ever put air in the same kind of tire before?

"A. Yes, sir, I put air in that tire before.

"Q. What do you mean by all right?

"A. I looked at it; it seemed to be all right.

"Q. Did you inspect that tire before you put air in it?

"A. It looked like to me it fitted up all right, nothing wrong about it.

\* \* \* \* \* \* \* \* \*

"Q. How did that rim look to you, both the side rim and the lock rim?

"A. Looked all right.

"Q. Did they seem to be in place?

"A. Yes, sir."

After the accident the tire and rim were sent to an experienced mechanic, who found them in serviceable condition and apparently all right. No unusual accumulation of rust or dust was observable. The same rim and tire were put back in service without having to be repaired.

There is little, if any, conflict in the testimony. A careful consideration of the entire record convinces us that the plaintiff sustained injury notwithstanding the fact that no one was negligent. The unfortunate accident belongs to that class of accidents to which, in this motor vehicle age, all of us are at times exposed, without fault of anyone.

For the reasons stated the verdict of the jury will be set aside, the judgment of the trial court reversed, and final judgment here entered for defendant.

*Reversed and final judgment.*