# Richmond

CHICK TRANSIT CORPORATION, ETC. V. RAY A. EDENTON, ADMINISTRATOR, ETC.

April 28, 1938.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*John Barton Phillips* and *Venable, Miller, Pilcher & Parsons,* for the plaintiffs in error.

*Robinson Moncure, Frederick L. Flynn, J. Randolph F. Davis, Howard W. Smith, Jr.,* and *Albert V. Bryan,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Ray A. Edenton, administrator of the estate of Willis Deavers, deceased, instituted an action against the Chick Transit Corporation and Banks Wade to recover damages for the wrongful death of Deavers which occurred when an automobile that he was driving was in collision with the truck of the Chick Transit Corporation, which was being driven by Banks Wade. The result of the trial was a verdict and judgment in favor of the administrator against both defendants for $10,000.

The verdict of the jury and the judgment of the court approving it compel us, under well established rules,

to consider the evidence and the reasonable inferences to be drawn therefrom in a light favorable to the plaintiff. Bearing that rule in mind, we find from the evidence the following facts: That the collision occurred on United States Highway No. 1 which runs approximately north and south from Washington, D. C., to Richmond, Va. The hard surface of the highway at the point of the accident is twenty-nine feet wide, practically straight with a slight ascending grade to the north. There are shoulders on each side five feet wide. The hard surface is divided into three lanes, the north-bound and center lanes being nine feet wide, while the south-bound lane is eleven feet wide. The accident occurred on January 30, 1936, at between 7:30 and 8:00 o'clock in the morning. The weather was good and the road dry. A person named Lyde was a passenger with Deavers. Both of them were killed.

The jury would have been warranted in finding from the physical facts which will be detailed later, that Deavers was driving his two-passenger Chevrolet car in the south-bound traffic lane going towards Richmond; that Banks Wade was driving the truck, which was thirty feet long and of the trailer type, towards Washington but that he was not on his side of the highway and in his north-bound lane. He admitted that he was driving in the center lane and it could be reasonably inferred from the physical facts that immediately before the impact he left the center lane and drove over into the south-bound lane which was being used by Deavers. It is evident that each of them was in plain view of the other. From the force of the impact and the damage to the car and the truck it could be inferred that Wade was driving at an excessive speed.

The tire marks in the highway and other physical facts justify the inference that as they proceeded to the point where either one or the other had to change the course of his vehicle or else collide, Deavers cut his car to his left towards the center lane and at this time Banks Wade attempted to return to his side of the highway and the car

and truck collided either in the center lane or on the line dividing that lane from the south-bound lane.

The tire marks in the south-bound lane which were identified as having been made by the car of Deavers tell us that he was driving in his proper lane of traffic.

Deavers was a plumber and had his plumbing tools in the rear of the car. The tool box was torn open by the impact and the tools fell to the road near the line between the center and south-bound lanes. The impact broke the wheel of the Chevrolet causing the hub to fall to the road. From the point where it fell there was an indentation mark on the road extending almost to where the car came to rest. These facts tend strongly to fix the point of actual impact as being near the line between the south-bound and center lanes and some twenty-five or thirty feet south of where the truck and car came to rest.

A reasonable inference could be drawn from the position of the truck after the accident that it was being driven first in the center lane and then in the south-bound lane and immediately in the path of the Deavers car. It was standing diagonally across the center lane, with the left rear trailer wheels west of the south-bound lane and the rear of the body extending over into the lane more than three feet. The tractor must have been even farther over in the south-bound lane, for turning the tractor first to the left into the south-bound lane and then to the right would not cause the trailer to go over into the south-bound lane as far as the tractor must have gone. On a straight-away the trailer would follow the tractor but on a curve it would not.

A reasonable inference pointing to excessive speed could be drawn not only from the damage to the car and the truck but also from the added fact that notwithstanding the car was in front of the truck and meeting it, the momentum of the truck, which was unloaded, was sufficient to push the car backwards and sideways for twenty-five to thirty feet even though the axle of the car was dragging.

Banks Wade had commenced his trip in Danville, Virginia, at noon on January 28th. The collision occurred

around 7:30 or 8:00 o'clock on January 30th. During that time he had had no substantial amount of sleep. He had taken naps in the truck but at one time drove sixteen hours without any sleep. This was a violation of Code, section 2154(137), which prohibits driving for more than thirteen hours in a twenty-four hour day. According to Dr. Powell, the coroner, Wade stated in answer to questions as to how it happened that, "I may have been asleep," and according to witness Hazzard, Wade stated immediately after the collision that, "It happened so quickly I don't know just how it happened." When Wade testified he denied making these statements.

■ That circumstantial evidence is sufficient to support a verdict and judgment in a civil action is beyond question. *Wood's Adm'x* v. *Southern Ry. Co.*, 104 Va. 650, 52 S. E. 371; *Milton's Adm'x* v. *Norfolk & W. Ry. Co.*, 108 Va. 752, 62 S. E. 960; and *Chesapeake & O. Ry. Co.* v. *Catlett*, 122 Va. 232, 94 S. E. 934.

In *Chesapeake & O. Ry. Co.* v. *Ware*, 122 Va. 246, 95 S. E. 183, the court held that the jury could infer that a fire was set out by the engine from the fact that just a short time before the fire a train passed the point where it was started.

■ It is elementary that negligence may be established by circumstantial evidence. *Wood's Adm'x* v. *Southern Ry. Co., supra.*

■ In our opinion the evidence is clearly sufficient to support the conclusion that Wade was guilty of negligence in the manner in which he operated the truck and that his negligence was the proximate cause of the death of Deavers. In fact, he admits he was driving in the center lane, which constituted negligence on his part.

■ The testimony of Wade, who was the only eyewitness, is all that was introduced to establish contributory negligence on the part of Deavers. His testimony was in conflict with the physical facts and the jury evidently disregarded it as they had the right to do. The burden of proving contributory negligence was upon the defendants.

They failed to carry that burden. The motion to set aside the verdict as being contrary to the law and the evidence was properly overruled. The defendants will not be heard to argue here, as they attempt to do, that the jury erroneously refused to adopt their theory of the case.

The giving of instruction G is assigned as error. It reads:

"The Court instructs the jury that if they find for the plaintiff, then in ascertaining the damages the plaintiff is entitled to recover, the jury shall find the same with reference to the following:

"1. The pecuniary loss sustained by the wife and child of Willis Deavers, fixing such sum as would be equal to the probable earnings of the deceased, taking into consideration his age, intelligence, and health, during what would have been his lifetime if he had not been killed.

"2. In ascertaining the probability of life of the deceased, the jury have the right to determine the same with reference to recognized scientific tables relating to the expectation of human life.

"3. By adding thereto compensation for the loss of his care, attention and society of his wife and his child.

"4. By adding such further sum as they may deem fair and just by way of solace and comfort to his wife and child, for the sorrow, suffering and mental anguish occasioned to wife by his death."

The specific objection to this instruction is that it allows a recovery for all that Deavers would have earned during his lifetime, without taking into consideration the fact that it is to be presently paid and not to be paid in instalments from time to time, and without taking into consideration that Deavers, had he lived, would have expended a portion of his earnings for his own use.

The instruction in the form given has been approved in several Virginia cases. See *Baltimore & O. R. Co.* v. *Wightman's Adm'r*, 29 Gratt. (70 Va.) 431, 26 Am. Rep. 384, and *Baltimore & O. R. Co.* v. *Noell's Adm'r*, 32 Gratt. (73 Va.) 394; *Norfolk & W. Ry. Co.* v. *Cheatwood's Adm'x*, 103 Va.

356, 49 S. E. 489; *Pocahontas Collieries Co.* v. *Rukas' Adm'r,* 104 Va. 278, 51 S. E. 449; and *Ratcliffe* v. *McDonald's Adm'r,* 123 Va. 781, 97 S. E. 307.

It must be remembered that this is an action for damages for wrongful death, and under Code, section 5787, as amended by Acts 1920, ch. 25, p. 26, the jury in any such action may award such damages as to it may seem fair and just, not exceeding $10,000. The defendant has not assigned as error that the damages are excessive nor did he make any such claim in the court below. In fact we have held recently in construing the statute in an action for wrongful death that the amount of recovery is left entirely to the discretion of the jury, as long as it does not exceed $10,000. *Harris* v. *Royer,* 165 Va. 461, 182 S. E. 276.

The second objection to the instruction is that when Deavers was killed he had no child. The child was born subsequent to his death, and, therefore, the defendant says that nothing should be added for the child for its loss of a father's care, attention and society. This objection is not impressive. The loss to this child of a father's care, attention and society is just as great as it would have been if it had been born prior to the death of the father. He will miss the solace and comfort usually provided by a father to his child no less by reason of the fact that he was born after the father was killed.

We have sustained for so many years the rule that is applied in the instruction here excepted to, that we prefer to adhere to it and follow our own precedents as evidenced by the many Virginia cases in which this instruction has been approved.

Instruction I was objected to because it was stated therein that where a highway is divided into three lanes an automobile should not be driven in the center lane except where overtaking and passing another vehicle, but should be driven in the lane nearest the right hand edge of the highway, and if the defendants' truck and trailer were driven in the middle or in the south-bound lane, the defend-

ants were negligent. The defendants contend that there was no evidence that the truck was being driven in the south-bound lane. We have already stated that the jury were warranted in concluding from the physical facts that the truck and trailer were being driven in the south-bound lane and Wade admitted that he was driving in the center lane. The first part of the instruction simply stated the statutory rule where the highway is divided into three lanes. Code, section 2154 (114).

A number of peremptory instructions were asked for by the defendants and refused. They were based upon a partial view of the evidence and were properly refused. Other exceptions were taken to instructions granted and refused. Fourteen instructions were granted in all. They embraced every possible theory of the case and fully and fairly submitted all issues. We have not only considered the instructions granted but those refused. The rulings of the court on the granting and refusing of instructions are free from reversible error.

The judgment is affirmed.

*Affirmed.*