# Richmond.

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY v. B. A. SEAY.

January 25, 1954.

Record No. 4144.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Walter Leake, Meade T. Spicer, Jr.* and *George F. Abbitt, Jr.,* for the plaintiff in error.

*A. L. Pitts, Jr., John B. Boatwright* and *Robert Whitehead,* for the defendant in error.

SMITH, J., delivered the opinion of the court.

This is an action by B. A. Seay, referred to as plaintiff, to recover damages for the destruction of certain of his property by a fire which he claims was started by a steam locomotive operated by The Chesapeake and Ohio Railway Company, referred to as defendant. The jury rendered a verdict against the railway company for $20,000 and the trial court by its judgment approved the verdict, to which judgment we awarded the company a writ of error.

The plaintiff owned a frame building in the town of Dillwyn, Virginia, in which he operated a grain and feed mill, an automobile service station, and a general store. The original part of this building was three stories high to which an addition two stories high had been added on the east side next to an alley. Separated from this structure by the alley was another building owned by the plaintiff, which was used as a warehouse, barber shop, and shoe shop. Both of these buildings were covered with metal siding and roofing and were situated about 600 feet east of defendant's depot, in the area between U. S. Highway No. 15 and the railway right of way.

On top of the two story addition to the mill building, about 20 feet above the ground, was a small structure 12 feet long, 8 feet wide, and 6 feet high, known as the "doghouse," in which there were two windows or openings, without sashes or casements, 5 feet 2 inches wide and 3 feet 6 inches long, one of which faced toward the defendant's tracks. The "doghouse" was connected to the mill building by a door from the third floor. Two iron pipes or chutes, 10 or 12 inches square, connected with a set of wheat cleaners, ex-

tended up through a hole in the floor of the "doghouse"; through them wheat chaff and other by-products of the cleaning process were regularly discharged by means of blowers. At the time of the fire the "doghouse" had not been cleaned out for nearly a year and wheat chaff and trash had accumulated on the floor about a foot deep. The defendant's evidence tended to show that the conditions in the "doghouse" might have been favorable for spontaneous combustion, and the plaintiff admitted that the mill was infested with rats and mice.

Between 3:30 and 4:00 o'clock on the afternoon of May 8, 1951, several persons at different places outside the mill building almost simultaneously observed smoke, followed by flames, issuing from the "doghouse," and sounded the alarm. The plaintiff, his son, and an employee, who were in the mill building, were notified of the fire and plaintiff's son rushed up to the "doghouse" and found that the fire was confined to that area. The fire fighters had difficulty in getting their equipment functioning and by the time the trouble was corrected the fire had spread, subsequently enveloped plaintiff's buildings and ultimately totally destroyed them.

In our view of the case it will be necessary to discuss only that phase which brings in question the sufficiency of the evidence to sustain the verdict and judgment.

Under the provisions of Code, § 56-428, generally known as the Featherstone Act, if the evidence shows that the fire was started by sparks or coals emitted or dropped from the defendant's engine, then defendant is liable whether it was negligent or not. *Southern Ry. Co. v. Barker,* 173 Va. 313, 4 S. E. (2d) 395.

It is necessary to examine the evidence and ascertain if it shows that defendant was responsible for the origin of the fire by sparks or coals emitted or dropped from its locomotive as it passed plaintiff's property on the day of the fire. The burden of proof on this vital point rested upon the plaintiff. He was required to establish by a preponderance of the evidence that the fire that destroyed his buildings was set out by

the defendant. This fact, of course, could have been proved by circumstantial evidence. But it could not be presumed, and plaintiff's burden of proof was not lightened by statutes such as § 56-428. *Southern Ry.* v. *Peanut Corp.*, 158 Va. 359, 164 S. E. 261.

██ The defendant operates a branch line from Bremo, on its James River division, to Dillwyn, a distance of sixteen miles, over which it runs one train each day. On the day of the fire defendant's train, consisting of locomotive No. 884, one freight car and a passenger coach, arrived at Dillwyn in the morning and proceeded past the depot to the turntable, where the engine was uncoupled and turned around. It then moved east past plaintiff's mill and entered a spur track located between the main line and the mill. After switching several cars over the spur track, the train, consisting of the engine, three freight cars, and a passenger coach was ready by noon to return to Bremo, but remained on the main line until 12:10 p. m., its scheduled time of departure.

The distance between the nearest part of the "doghouse" and the center of the spur track was about 48 feet and the distance to the center of the main line track was about 65 feet. The engine passed the mill probably six times on the day of the fire.

Several of plaintiff's witnesses testified that they had seen unidentified locomotives owned by plaintiff throw cinders and coals on occasions other than the day in question, and various members of the local volunteer fire department testified that they had assisted in extinguishing grass fires at different times in fields adjoining or near the defendant's right of way. However, there was no evidence that locomotive No. 884 was emitting sparks, throwing cinders, or dropping coals during its operation in Dillwyn or anywhere along its line on the day of the fire. This locomotive was shown to have been equipped with the most generally approved type of spark arrester of which a component part is the "draftac" steel netting with openings of uniform size, three sixteenths of an inch wide by three fourths of an inch long. The engine

had undergone a periodic federal inspection two days prior to the fire and had been found to be in good condition, including its spark arrester and ash pan. The conductor and engineer testified that they did not see the engine throw any sparks on the day of the fire and that the locomotive was working perfectly, that they were hauling a very light load and that the engine was not laboring.

Defendant contends that the *Peanut Corporation* case, *supra*, is conclusive of the present case. In that case the railroad company's tracks were shown to be within fifty feet of the house which was destroyed by a fire claimed to have been caused by sparks and cinders from an engine owned by the railway company. There was testimony that: on prior occasions engines did emit sparks when passing the building; the engine charged with responsibility for the fire was equipped with a spark arrester and had been inspected a few days before the fire and was in perfect condition; the train passed the building about *thirty minutes* before the fire was discovered; when discovered the blaze was "no bigger than a blaze from a lantern"; the train was traveling at a speed of ten to twelve miles per hour up a four per cent grade; the locomotive was laboring and had been recently fired; the weather had been dry except there had been a slight rain just before the fire; a mild wind was blowing from the defendant's tracks in the direction of the house; the fire was discovered in some lattice work about 25 feet from the ground at the end of the building next to the railway tracks; no current of electricity was connected with the building and no fire was used in or about the premises. The judgment of the trial court entered on the verdict of a jury in favor of the plaintiff was set aside on appeal.

Plaintiff relies primarily on the *Barker* case, *supra*, where a judgment was affirmed against the railway company for damage occasioned by a fire alleged to have originated from sparks emitted from an engine of the railway company. Chief Justice Hudgins there said that the case was controlled by *Norfolk & Western Railway Co.* v. *Richmond Cedar Works,*

160 Va. 790, 170 S. E. 5; *Virginian Ry Co.* v. *London,* 148
Va. 699, 139 S. E. 328; *C. & O. Ry. Co.* v. *Ware,* 122 Va.
246, 95 S. E. 183; and *Norfolk & Western Railway Co.* v.
*Spates,* 122 Va. 69, 94 S. E. 195.

In comparing the facts of the *Barker* case, *supra,* with those
in the *Peanut Corporation* case, *supra,* the Chief Justice said,
at page 318: "The controlling facts in that case [*Peanut Cor-
poration* case] were that a fire was discovered in the Hull
House some 30 minutes after a slow-moving train had passed.
At the time the fire was first observed, it was 'no bigger than
a blaze from a lantern.' Mr. Justice Gregory, in the course
of the court's opinion, said: 'There is an entire absence of any
evidence that the engine was emitting sparks or dropping
coals as it passed the Hull House. No witness testified that
sparks were emitted by the engine just before it reached the
Hull House or as it passed there or at any other time during
the trip from Norfolk to Lawrenceville, the destination of
the train.' "

Mr. Justice Holt in *Norfolk & Western Railway Co.* v.
*Richmond Cedar Works,* 160 Va. 790, 801, 170 S. E. 5, 8,
referring to the *Peanut Corporation* case, *supra,* said: "No new
principle is stated in the *Peanut Corporation Case.* As we
have heretofore stated, it lays down the familiar rule that a
plaintiff must prove his case. Equally well established is the
fact that he does not prove it merely by showing some loss by
fire of property along the right of way. He must fortify it
by evidence direct or circumstantial."

Mr. Justice Gregory in the course of his opinion in the
*Peanut Corporation* case, *supra,* pointed out that the facts
there were entirely different from those in the *Spates* and
*London* cases, *supra.* Furthermore, none of the cases follow-
ing the principle of the *Barker* case, *supra,* rests upon the
naked fact that there was a fire, but there was evidence in
each showing that the fire originated from sparks emitted
from the engine of the railway company.

The question here presented is, could the jury fairly and
reasonably infer as a conclusion, aided by experience and

reason, from facts proven that the fire which caused the plaintiff's loss originated from defendant's locomotive?

In *Edwards* v. *Hobson*, 189 Va. 948, 952, 54 S. E. (2d) 857, after pointing out that the origin of a fire which had destroyed plaintiff's property might have been due to any one of the many causes of fire, Mr. Justice Miller said: "When such is the status of proof, there can be no recovery. *Chesapeake, etc., R. Co.* v. *Catlett*, 122 Va. 232, 94 S. E. 934, and *Kenny Co.* v. *Dennis*, 167 Va. 417, 189 S. E. 164.

"The inadequacy of proof of this nature and character to establish liability is pointed out and discussed in Moore on Facts, Vol 1, secs. 33 and 34, pp. 61-63. It is there said:

" 'Suspicion cannot give probative force to testimony which in itself is insufficient to establish or to justify an inference of a particular fact.'

     \*        \*        \*        \*        \*        \*        \*

"In *Kenny Co.* v. *Dennis, supra,* at page 420, is found this appropriate and pertinent language:

" ' \* \* \* Where the evidence shows that any one of several things may have caused the injury, for some of which defendant is not responsible, and leaves it uncertain as to what was the real cause, then plaintiff has failed to establish his case.' " See also, *Guthrie* v. *Carter*, 190 Va. 354, 57 S. E. (2d) 45; *Richter* v. *Seawell*, 183 Va. 379, 32 S. E. (2d) 62; *Barnett* v. *Va. Pub. Service Co.*, 169 Va. 329, 193 S. E. 538; *C. & O. Ry. Co.* v. *Heath*, 103 Va. 64, 48 S. E. 508.

The facts disclosed in the evidence before us are not inconsistent with the theory that the origin of the fire was due to (1) spontaneous combustion, or (2) electricity, or (3) rats and mice Any one of these is as probable a cause of the fire in question as the defendant's engine.

Obviously, if the window openings in the "doghouse" were in the same condition for eighteen years, as the plaintiff testified they were, rain water could have entered through such openings. On the other hand, if the plaintiff had no trouble with water getting in there neither should he have had any

trouble with sparks or cinders. If the material in the "dog-house" was moist or damp, then (1) the conditions were favorable for spontaneous combustion; and (2) the conditions were unfavorable for sparks or cinders from an engine to ignite the material. If, on the other hand, the material in the "doghouse" was dry, then the conditions were favorable for fire to have been started, (1) by rats or mice; (2) by a dust explosion in the wheat cleaner and pipes leading into the "dog-house"; (3) by a short circuit in the electric wiring and current extending all through the first floor and partly in the second floor of the mill; (4) by sparks or cinders emanating from the chimneys of other buildings in close proximity to the mill; or (5) by any of the other innumerable causes, including human agencies.

On the day of the fire there was only one train that passed over the Dillwyn branch of defendant's road and this train passed the plaintiff's property six times, leaving at 12:10 p. m., and the fire was first seen between 3:30 and 4:00 p. m. There is an entire absence of any evidence that the engine was emitting sparks, throwing cinders or dropping coals during its operation at Dillwyn or anywhere along its route from or to Dillwyn, but there is positive evidence to the contrary. There was testimony that at other times and places the plaintiff and others had seen and heard cinders from engines fall on the roofs "like hail," but none was seen or heard by anyone on this occasion.

The defendant's evidence showed the engine to be in perfect condition with the most approved spark arrester in use; the engine was in charge of an experienced engineer; and the engine without laboring was working perfectly. The basic cause of the emission of sparks or cinders from an engine is a heavy load, which was lacking in the present case, for there were only four cars and nowhere was there a grade that strained the locomotive.

The trial court recognized the force of the defendant's argument that three hours and a half had elapsed between the departure of defendant's train from Dillwyn and the dis-

covery of the fire, for this was said in overruling the motion to set aside the verdict:

"It appears to me this is the strongest contention the defendant makes and the weakest part of the plaintiff's case, and yet there was no evidence in the case as to how long the material which had accumulated in what was called the 'doghouse' might have smoldered before bursting into flame. There is no testimony whether it was tinder dry, only fairly dry, or dry in places and damp in places. Of course the cinder from the engine would not have smoldered for this length of time but it is possible that it might have ignited this material and that that would have smoldered."

Here the trial court overlooked the rule that the burden of proof was upon the plaintiff to prove by a preponderance of the evidence that the defendant was responsible for the origin of the fire by sparks or coals emitted or dropped from its locomotive and it was not the duty of the defendant to account for or to explain the origin of the fire. Notwithstanding the burden that rested on the plaintiff to produce evidence on this question, the only such evidence came from an experienced scientist called by the defendant whose experiments showed that embers or cinders taken from this engine, under train operating conditions, when lodged in material such as was in the "doghouse" would invariably cool off in a few seconds without starting any fire.

The plaintiff, in attempting to prove that defendant's engine emitted sparks and cinders which caused the fire that destroyed his buildings, proved only that a fire occurred in which his buildings were destroyed; that the defendant's engine passed near his buildings six times on the day of the fire; that other engines of defendant at various times before and since the fire, emitted sparks and cinders which caused fires in Dillwyn. Nowhere in his evidence, however, can be found any explanation of how or why an ember emitted from the engine's smokestack could or did remain dormant or inactive for over three hours before breaking into flames, but for an answer we are left to speculation, conjecture and surmise.

We agree with the defendant that the decision in the *Peanut Corporation* case, *supra*, controls the disposition of the controversy before us. The most that can be said of this case is that an unexplained fire occurred which destroyed plaintiff's property.

The plaintiff has failed to prove his case in the manner required by law and therefore the judgment of the trial court is reversed, the verdict of the jury set aside, and final judgment will be entered here for the defendant.

*Reversed and final judgment.*